## W. M. PICKRELL v. STATE.

No. A-97. Opinion Filed April 18, 1911.

TRIAL—Cross-Examination of Witness—Improper Conduct of Prosecuting Attorney. After an objection has been sustained to an improper question propounded on the cross-examination of the defendant, the repeated asking by the prosecuting attorney of similar questions, notwithstanding the sustaining of the objections thereto, and his action in excepting to the rulings of the court thereon, constitutes misconduct on the part of the prosecuting attorney prejudicial to the substantial rights of the defendant, for which a conviction will be reversed; although such conduct was reprimanded by the court, and the jury directed to disregard the same.

(Syllabus by the Court.)

*Appeal from Grady County Court; N. M. Williams, Judge.*

W. N. Pickrell was convicted of a violation of the prohibition law, and appeals. Reversed and remanded.

The plaintiff in error was convicted in the county court of Grady county of the crime of unlawfully selling intoxicating liquor, and was on November 11, 1908, sentenced to be confined in the county jail for a term of thirty days and to pay a fine of fifty dollars. From the judgment he appealed by filing in this court on February 13, 1909, a petition in error with case-made.

George Turner, the sole witness for the state, testified that he lived at Guthrie, and was employed as a detective in the enforcement of the prohibition law; that he met the defendant September 6, 1908, on a train going to Chickasha, that the next day, Labor Day, he met him on the street in Chickasha and started

to walk out to the Fair Grounds with him, and after going part way bought a half-pint of whisky from him.

On the part of the defendant, C. C. Davis testified that he and the defendant lived neighbors at Logan, N. M.; that together they returned to Chickasha from New Mexico, arriving the day before Labor Day, and stayed together all the time until they returned from the picnic on Labor Day. The defendant testified that he lived several years in Chickasha before going to New Mexico to homestead land; that he returned to Chickasha with C. C. Davis, arriving the day before Labor day; that on the train he met a man who he thought was the prosecuting witness who said he was going to Chickasha and asked him for a drink; that he told him he did not have any whisky; that he then asked him if he could buy any whisky at Chickasha, and defendant told him that a man could buy whisky there when he formerly lived there. He further testified that he did not see the prosecuting witness at any time on Labor Day, and did not sell him whisky, and that he had never before been arrested.

Several character witnesses testified that the defendant had always borne the reputation of being a law-abiding citizen.

Complaint is made that defendant was prevented from having a fair and impartial trial by reason of the misconduct of the county attorney in asking improper questions of witness Davis and of the defendant as a witness on his own behalf; also his offer on the part of the state to introduce the records of the county court showing the number of cases pending against one Bondurant.

The record is as follows:

"Q. You say you were over to Bondurant's place there? A. Yes, sir. . How many whisky charges are there against Mr. Bondurant here? (Objected to as incompetent, immaterial, and irrelevant. Objection is by the court sustained.) Q. Were you down here at the pool hall on Labor Day? A. Yes, sir. Q. Do you know how many times they have been arrested? A. Who? Q. Bondurant. (Same objection is by the court sustained.) Cross-examination of the defendant. Q. Did you know H. C. Bondurant

before you left here? (Objected to as incompetent, immaterial, and irrelevant. Objection overruled. Defendant excepts.) A. Yes, sir. Q. Had you ever worked for Bondurant? A. Yes, sir. Q. That was prior to the time you left here? A. Yes, sir. Q. How many times has Mr. Bondurant been arrested for selling whisky? (Objected to as incompetent, immaterial, and irrelevent. Objection sustained. The state excepts.)"

In rebuttal the record shows:

"The state now offers to introduce the records of the county attorney, showing the number of cases pending against H. C. Bondurant. The defendant objects and excepts to the misconduct of the county attorney in offering said records and asks the court to admonish the county attorney not to make any such remarks. The objection is by the court sustained, and the court instructs the county attorney not to make such remarks before the jury; that the introduction of the records is not admissible and the county attorney should know that they are not. To which ruling of the court the state excepts."

Motion for new trial was made on the ground of:

"Misconduct of the county attorney in the trial of said cause, prejudicial to the rights of this defendant, and which prevented this defendant from having a fair and impartial trial, which said misconduct consisted of the county attorney in repeatedly making offers to introduce testimony tending to show that one H. C. Bondurant had been arrested on a charge of selling intoxicating liquors, said offers being made by the county attorney after objections to the same had been repeatedly sustained by the court, to which conduct the defendant then and there excepted. Wherefore defendant prays that said verdict be set aside and held for naught and this defendant be given a new trial."

*A. L. Herr,* for plaintiff in error.
*Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, JUDGE (after stating the facts as above). It is insisted by counsel for plaintiff in error that the persistent asking of incompetent, improper, and prejudicial questions by the county attorney, after previous objections thereto having been made and sustained by the court, constitutes reversible error, citing:

12 Cyc. 572; *Cargill v. Comm.,* 13 S. W. 916; *Clark v. State,*

5 S. W. 115; *State v. Rose,* 76 S. W. 1003; *People v. Derbert,* 71 Pac. 564; *Heller v. People,* 43 Pac. 124; *People v. Wells,* 34 Pac. 1078.

We believe the action of the prosecuting attorney, as shown by the record, constitutes misconduct on his part prejudicial to the substantial rights of the defendant, such conduct was clearly calculated to prejudice the minds of the jury and manifested a disposition to disregard the legal rights of the defendant, and should have been promptly condemned by sustaining the motion for a new trial.

Adopting the language of Mr. Justice McFarland in the case of *People v. Wells, supra:*

"It would be an impeachment of the legal learning of the counsel for the people to intimate that he did not know the question to be improper, and wholly unjustifiable. Its only purpose, therefore, was to get before the jury a statement, in the guise of a question, that would prejudice them against appellant. If counsel had no reason to believe the truth of the matter insinuated by the question, then the artifice was most flagrant; but if he had any reason to believe in its truth, still he knew that it was a matter which the jury had no right to consider. The prosecuting attorney may well be assumed to be a man of fair standing before the jury, and they may well have thought that he would not have asked the question unless he could have proved what it intimated if he had been allowed to do so. He said plainly to the jury that Hamlet did not want his friends to say: 'As, "well we know"; or, "we could, an if we would"; or, "if we list to speak"; or, "there be, an if there might." ' This was an entirely unfair way to try the case; and the mischief was not averted because the court properly sustained the objection,—though we think it should have warned counsel against the course which he was taking,—and instructed the jury specially on the subject. The wrong and the harm was in the asking of the question. Of course, in trials of criminal cases, questions as to the admissibility of evidence will frequently arise about which lawyers and judges may fairly differ in opinion; and in such cases defendants must be satisfied when courts sustain their objections. But where the prosecuting attorney asks a defendant questions which he knows, and every judge and lawyer knows, to be wholly inadmissible and wrong, and

where the questions are asked without the expectation of answers, and where the clear purpose is to prejudice the jury against the defendant in a vital matter by the mere asking of the questions, then a judgment against the defendant will be reversed, although objections to the questions were sustained, unless it appears that the questions could not have influenced the verdict."

The offer to introduce the records of the county court showing the number of cases pending against a former employer of the defendant and the taking of an exception to the ruling of the court thereon were wholly improper. The court had three times sustained objections to this line of testimony, but the prosecuting attorney still persisted in the course he had taken. He could have had but one motive in view in the course pursued by him; that was to prejudice the jury against the defendant. Certainly it cannot be said, in view of the improper conduct of the prosecuting attorney, that the defendant in this case had that fair and impartial trial prescribed by law. It is the duty of the prosecuting attorney to see that the defendant shall have a fair and impartial trial, and that he shall be convicted only by competent evidence, and to secure this he should himself be fair and impartial.

The only evidence in the case against defendant was the uncorroborated testimony of one Turner, an itinerant informer, who styles himself a private detective. All good citizens have an interest in the vindication of public justice and maintaining the majesty of the law. It is a matter of common knowledge that the most potent factor of the dishonest dispensation of justice is the production of untruthful testimony upon the witness stand. Generally speaking, a private detective is not over scrupulous in the truthfulness of his testimony, and such evidence should be viewed with caution, as it may not be entitled to very much credence.

Chief Justice Maxwell has well said:

"It is doubtful if anything is really gained in the administration of the law from the admission of such testimony, and the consequent encouragement of the courts of the practice." (*Heldt v. State*, 20 Neb. 492, 57 Am. Rep. 835.)

However, the weight and credibility of such evidence are questions for the jury, and where a conviction is had upon the uncorroborated testimony of a private detective the courts can only look carefully to the record to see that no prejudicial error has occurred. Here defendant, as a witness on his own behalf, denied the sale and called several witnesses whose testimony tended to prove an alibi; others who testified to his good character as a law-abiding citizen. Nevertheless, the credibility of defendant was an important matter in the case, and whatever evidence tended to impair that credibility was material in the highest degree. That the misconduct of the prosecuting attorney so tended is clear. His persisent efforts to get before the jury the charges against Bondurant, taken in connection with the testimony that defendant had been working for him, tended to create the impression that defendant might be selling whisky for Bondurant. We believe that the rebuke administered by the court below did not remove such impression, as the prosecuting attorney promptly excepted to the action of the court, thus leaving with the jury the impression that he had been grossly outraged by the rulings of the court. Such conduct tends to destroy public respect for the prosecuting attorney's office and invites contempt for the dignity of the court. A person accused of crime is entitled to a fair and impartial trial, conducted according to the established principles of law, the most important of which is that the verdict of the jury shall be founded only upon competent evidence. If a defendant cannot be fairly convicted, he should not be convicted at all, and to hold otherwise would be to provide ways and means for the conviction of the innocent.

For the reasons stated, the judgment of the county court of Grady county is reversed, a new trial awarded, and the cause remanded.

FURMAN, PRESIDING JUDGE, and ARMSTRONG, JUDGE, concur.