### FRANK NASH v. STATE.

No. A-1110.  Opinion Filed August 31, 1912.

(126 Pac. 260.)

1. **TRIAL—Direction of Verdict.** When, in the trial of a criminal case, the proof introduced on behalf of the state is insufficient to sustain a conviction, it is the duty of the trial court to advise the jury to return a verdict of not guilty.

2. **SAME—Circumstantial Evidence—Sufficiency.** (a) When, in the trial of a criminal case, the evidence relied upon for conviction is entirely circumstantial, the facts shown must not only be consistent with and point to the guilt of the accused, but must be inconsistent with his innocence.

   (b) Where the evidence only raises a suspicion of the guilt of the accused, it is insufficient to sustain a conviction. Suspicion is not proof; and the court should direct a verdict under such circumstances.

3. **SAME—Reasonable Doubt—Presumption of Innocence.** A person on trial, charged with the commission of a crime, is by law presumed to be innocent until his guilt is established beyond a reasonable doubt; and no inference of guilt can be founded upon circumstances, except such as naturally or necessarily follow from the facts. If the facts and circumstances are not of such character as to fairly permit an inference inconsistent with innocence, it cannot be regarded as sufficient to support a conviction.

4. **BURGLARY—Evidence—Proof.** In a prosecution for burglary, evidence held insufficient to sustain a conviction.

(Syllabus by the Court.)

*Appeal from District Court, Comanche County;*
*J. T. Johnson, Judge.*

Frank Nash was convicted of burglary, and appeals. Reversed.

*Jennings & Ross* and *Geo. D. Key,* for plaintiff in error.

*Smith C. Matson* and *C. J. Davenport,* Asst. Attys. Gen., for the State.

ARMSTRONG, J.   The plaintiff in error, Frank Nash, was tried on an information filed in the district court of Comanche county, charging John Murphy and him with burglarizing the store of Kraker Bros. & Naifer Dry Goods Company at Lawton, in said county, on the 28th day of April, 1910.   He was convicted and sentenced to serve a term of two years in the state penitentiary.

The material testimony may be summarized as follows:

Witness Kraker testified that he was one of the owners of the merchandise in the store at the time it was burglarized, and employed herein; that the store and safe were locked and in the usual order on the evening before the burglary; that on the following morning the store was found broken open, the safe blown with some high explosive, and $217, which had been left in it, gone; that $23 left in the cash drawer was also gone.

Witness Ed Morris testified that at the time of the burglary complained of he was a member of the Lawton police force; that he knew the accused, Nash, and had known him for about two years; that he was a member of the day force, and that the burglary occurred on Wednesday night; that on Friday evening following the burglary he saw the accused, between 9 and 10 o'clock, near First and D streets, and later saw him about two blocks west at the Val Blatz building, which stands up two feet or more above the ground; that the accused was under the building, and was shot through a hole in the floor by Officer Dossett, and immediately thereafter arrested; that the Val Blatz building is about two blocks east of the store which was burglarized; that while accused was under the house, and before he was shot, some one struck a match under the building, and said, "Where did we leave that stuff?" and was answered by some one on the outside of the building, who said, "Up this way farther;" that a small iron bar, used for a nail puller, and a steel instrument, called a "triangle," and a revolver were found under the building

near where the accused was shot; that a monkeywrench and a stick of dynamite were found near the safe in the burglarized store.

Witness John Dossett testified that he had been deputy sheriff and also chief of police in Lawton for a year or so; that he heard of the burglary on the day following its commission; that he was in the Val Blatz building with Officer Morris on Friday night following the burglary, and was watching the articles enumerated by Morris; that between 9 and 10 o'clock some parties came there; that he could hear them talking on the outside, and one of them crawled under the house and struck a match, and he heard him say, "whereabouts is that?" and the reply, "It is further down;" that there was a board torn up from the floor of the building where the articles were, and pretty soon a man crawled up to it, and said, "Here it is," and when he said that Officer Morris hollered, "Hold up;" that when he did that the light was shining under the building, and he saw the party raise a revolver under the hole where he stood; that he immediately jumped back and fired a shot through the hole with a shotgun loaded with BB shot; that there was some confusion under the floor, and the party said, "Don't shoot any more.;" that he went around to the outside to see who it was, and when he got there found the accused sitting on the ground, and when asked who he was the accused replied, "Frank Nash;" that the revolver, which was afterwards introduced in evidence, was found in the grass near where the accused was arrested."

Witness Froneberger testified that he had known the accused for two years; that he saw him the night of the burglary about 2:30 a. m.

Witness Fred Knight testified that he was in Lawton on the night of the burglary; that he went to bed about 11 p. m., and got up about 4 a. m.; that he was at Sid's Restaurant, on the corner of Third and D streets, at the time of the explosion; that a few minutes after the explosion he saw two men cross the street back of Sid's Restaurant and go down the alley east; that one was a large man and the other a small one. He was asked to compare the size of the small man with that of Frank Nash,

the accused, and answered that the comparison was about the
same, as best he could judge, but, on cross-examination, said that
he did not know who the men were.

Witness Froneberger was recalled, and said that he had seen
the accused, Nash, and others frequently on the street at all
hours of the night.

Witness Blimbrick testified that he was one of the Lawton
police force; that he knew the accused, Nash, and had known him
for almost a year; that he was on the force about a year; that
he saw Nash and several companions about 2:30 that night; that
he thought accused had on a light suit and a black hat; that he
did not hear the explosion; that some one wanted to borrow a
dollar, and accused said he did not have any money.

Witness Eckhardt testified that he lived two miles south of
Lawton; that he was in town on the night of the burglary, and
was in Sid's Restaurant about 3 or 4 o'clock a. m., and heard the
explosion; that he was standing on the walk just after the explo-
sion, and saw two persons go across the street into the alley; that
one was taller than the other; that he did not notice their cloth-
ing.

Witness Lewandowski testified that he had lived in Lawton
since 1901; that he had known the accused, Nash, for a year or
more; that he is a blacksmith, and that accused employed him to
make an iron instrument, about 4⅛ inches inside and 12 or 14
inches outside, and referred to it as a "triangle"; that the article
was not completed; that it was strong enough to hold up a brick
wall; that this was prior to the 27th day of April, 1910; that
after he sold out his shop to Mr. Jackson it stayed there a month
or more, when witness took it back to his brother's stand and
laid it down in front; that officer Cooper came over the morning
after the burglary and got the instrument and carried it away.

Witness Houston, recalled, testified that he saw the accused
in bed about 7 o'clock the morning after the burglary with his
clothes on.

Witness Rufe Le Fors testified that he found three impres-
sions around the combination on the safe which was blown; that
he applied the "triangle" in question over the knob of the com-

bination, and the set screws fitted exactly into the impressions on the safe door; that the "triangle" fitted in behind the combination, and by turning the screws against the safe it would pull a knob out; that the other instruments found, including the crowbar, fitted exactly the impressions made in prying open the door.

Witness William Cooper testified that he was a member of the police force, and heard of the burglary the morning after it was committed; that he found tracks across the street from the building which was burglarized, one of which was made by a 7 or 7½ shoe; that he never compared the measurements of the tracks and the shoe worn by the accused, Nash, but thought they compared very well; that he saw the accused at the Monarch Theatre the evening before the burglary was committed, and bought the drinks, and saw him again about 6 or 7 o'clock next morning; that accused had on a light suit at the time, and was with Frank Davis; that the three went across the street, and each drank two bottles of beer, for which the accused paid.

The state introduced the tools and instruments heretofore referred to, including the "triangle" testified about by witness Lewandowski, in evidence over the objection and exceptions of the accused. The state then closed its case, and counsel for the accused filed the following motion:

"Comes now the defendant, and moves the court to direct the jury to return a verdict of not guilty, for the reason that no proof has been offered that would warrant a verdict of guilty, and demurs to the evidence as insufficient to warrant a conviction, and demurs to the proof, for the reason that the information does not charge any offense as connected with the attempted proof made by the state in this: That the information alleges that the crime was committed on the 28th day of April, 1910, and does not charge that it was done in the nighttime of that day."

This motion was overruled and exceptions saved.

Counsel then asked the court to withdraw and exclude from the jury all the evidence introduced on the part of the state, because it in no way connected the accused with the alleged offense, which was overruled and exception saved. Counsel for the accused then asked the court to withdraw and exclude from

the consideration of the jury the testimony of witness Lewandowski, which motion was overruled and exceptions saved.

The accused testified in his own behalf that he owned the revolver found under the Val Blatz building; that he had loaned it to a boy named Wilson; that Wilson told him he had left it under this building, where accused could get it; that he went there for it; that he did not know any of the other instruments were under the building, had nothing to do with them, had never had them in his possession, and was in no way connected with the burglary charged, and had no knowledge of it; that he purchased the drinks referred to by Officer Cooper, and had seven, eight, or ten dollars in silver, which he had won shooting craps the night of the burglary. The state introduced several officers in rebuttal, who testified that they did not know Wilson.

The motion to advise a verdict should have been sustained. The evidence is entirely insufficient to sustain a conviction. The accused, by the foregoing testimony, is not connected with the burglary. The strongest circumstance against him is the fact that he was found under the building where the instruments, supposed to have been used in perpetrating the crime, were located. He explains that, and is not disputed. It is clear from the state's testimony that the officers put part of those instruments under the building, and there is no proof tending to show who put the others there.

When the proof introduced on behalf of the state is not sufficient to warrant a conviction, the trial court should advise the jury to return a verdict of acquittal. The "triangle" introduced in evidence, according to the state's testimony, was never in the possession of the accused, but was always in the possession of state's witness Lewandowski until the police officer went to him and got it the morning after the burglary was committed. Why these officers placed the instrument under the building with the other instruments supposed to have been used in this transaction is not explained. Upon what theory the instrument referred to in the evidence as the "triangle" was admissible is not clear and counsel has not undertaken to explain these circumstances.

The evidence is entirely circumstantial. It is contended on the part of the accused that the verdict is contrary to the law and the evidence. We are of opinion that this contention is well founded. The accused is presumed to be innocent until his guilt is established beyond a reasonable doubt; and no inference of guilt can be founded upon circumstances, except such as naturally or necessarily follow from the facts. If the facts and circumstances are of such character as to fairly permit an inference consistent with innocence, they cannot be regarded as sufficient evidence to support a conviction.

In *Sies v. State,* 6 Okla. Cr. 142, 117 Pac. 504, this court says:

"The general rule in criminal cases is that, where the evidence is circumstantial, the facts shown must not only be consistent with and point to the guilt of the defendant, but must be inconsistent with his innocence." And again: "Where the evidence only raises a mere suspicion of the guilt of the defendant, it is insufficient to sustain a conviction. Suspicion is not proof; and the court should direct a verdict of acquittal."

In the case under consideration, the only suspicious circumstance against the accused is, as we have said, that he was under the building where certain burglarious instruments were, with which was a revolver claimed by him. He explains his presence by saying that he went after the revolver, which he had loaned another, and knew nothing of the other articles, and had nothing to do with them. There is no proof whatever that he was ever in possession of any of them, or was in any way connected with the burglary. The proof on behalf of the state wholly fails to come up to the required standard. When the state rested, the motion by counsel for the accused that the court advise the jury to return a verdict of acquittal should have been sustained. The testimony of the witness Lewandowski should have been excluded; for by his own statement the accused was never in possession of the articles referred to in the evidence as the "triangle," and, even if his statements, which are disputed by the accused, were true, they throw no light whatever on the transaction. According to state's witness Cooper, the "triangle" was secured by Cooper the morning following the burglary from the witness Lewandowski, in whose possession it had at all times

been, so far as is disclosed by the proof. Just why the officers put this "triangle" under the building, and who put the other instruments under there, is not disclosed. If the officers put the "triangle" under the building after securing possession of it, it is just as reasonable to conclude that they put the other instruments there as it would be to conclude that the accused put them there, and more so. Upon what theory this testimony was held admissible is not made clear, and we know of no rule which would entitle it to admission under the proof in the record. Just how the officer, Cooper, knew that this article was in the possession of Lewandowski, and why he went immediately to secure its possession, is not explained. The testimony in the record is wholly insufficient to sustain a conviction. The verdict is contrary to the evidence, and the conviction cannot be sustained.

The judgment is reversed, and the cause remanded, with direction to grant a new trial.

FURMAN, P. J., and DOYLE, J., concur.