W. S. DOUGHERTY *et al.* v. STATE.

No. A-3028. Opinion Filed May 19, 1919.

(180 Pac. 720.)

1. **GAMING—Conducting Gambling Games—Sufficiency of Evidence.** The evidence in this case carefully considered and found insufficient to sustain the verdict found and the judgment thereon rendered.

2. **TRIAL.—Severance—Discretion—Gaming.** Under Sess. Laws 1916, sec. 12, a severance in a prosecution for unlawfully conducting gambling games is not a matter of right on the part of a defendant, but rests entirely in the judgment of the court.

*Appeal from District Court, Carter County;*
*W. F. Freeman, Judge.*

W. S. Dougherty and Virgil Wilson were each convicted of unlawfully conducting prohibited gambling games, and they appeal. Reversed and remanded.

*James H. Mathers, J. B. Champion,* and *William Pfeiffer,* for plaintiffs in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiffs in error, W. S. Dougherty and Virgil Wilson, together with Dock Ken-

nedy, who was found not guilty, and Jack Kennedy, who was not on trial, were jointly informed against for unlawfully carrying on and conducting poker games, roulette games, and other banking, percentage, and gambling games, with cards and other gambling devices for money, checks, and other representatives of value and credits, in a building in the town of Wirt, in Carter county, convicted, and each sentenced to one year's imprisonment in the penitentiary at McAlester, and to pay a fine of $500, and the costs of this prosecution. To reverse the judgment rendered, they jointly prosecute this appeal.

The defendants filed a motion for a severance, which the court denied, and the defendants each excepted.

The information charges the defendant "with conducting prohibited games in the manner and form as follows, to wit: That Dock Kennedy, W. S. Dougherty, Virge Wilson, and Jack Kennedy did on or about the 27th day of January, 1917, unlawfully and feloniously open, conducted, and carried on poker games, roulette games, and other banking, percentage, and gambling games played with cards and other gambling devices, for money, checks and other representatives of value and credits" at a designated place in Carter county.

The defendants insist that they filed a demurrer to the information, which the court overruled, and the defendants excepted. The record does not disclose that such demurrer was filed, or that the court ruled thereon.

Jim Carter testified that he was a deputy sheriff of Carter county, and that about the time named in the information he, accompanied by Mr. Gauntt, raided the place described in the information; that when he got in seven or eight feet some one remarked, "Look out for

the bank roll!" and they all jumped up; that when he en-- tered the room a roulette wheel was in operation, and poker games were running with money and poker chips in front of the players on the table; that the room was full, there being 50 or 75 persons in it; that he had to go 25 or 30 feet to get to Dougherty, and in doing so passed 12 or 15 persons, who were between him and Dougherty: that Dougherty was at the roulette wheel, and five, six, or seven persons were around the wheel; that Dougherty had some chips and money at the table, and put the money in his pocket; that witness had a conversation with Dough- erty, in which he asked him who was running the place, to which Dougherty replied, "Dock Kennedy," who was in the room; that Virge Wilson was standing at a table upon which there were some cards and an open sack of money, which Wilson grabbed and put in his pocket; that he got some money from a poker table; that he did not know those at the poker table; they were strangers; that the room was about 25 by 40 feet; that the only thing he saw Wilson do was he had a sack of money, but he did not know for what purpose or whose money it was, which he put in his pocket; that he did not know whose place it was, or who was running it; and that, at the time he got to Dougherty, Dougherty was just picking up the money and putting it in his pocket; and that at that time he did not see any games being conducted.

Jim Gauntt testified that on or about the 27th day of January, 1917, he and Mr. Carter raided a place in the town of Wirt, in Carter county; that he saw Virge Wilson there; that he was sitting at a table with a pack of cards lying on the table with a closed sack in front of him, which he put in his pocket; that no one was at the table with Wilson, and he was not doing anything; that the

table was a long table with a circle cut out of the middle of it; that Wilson was sitting in there, in a chair; that, when he saw Mr. Dougherty, Dougherty was talking to Mr. Carter; that Dock Kennedy was in the room; that there were quite a number of chairs and tables and a roulette table, and, when he saw the roulette wheel, Mr. Carter had it; that Mr. Carter went in first; that, when witness got in the room, there were 40 or 50 or more people in it, and all of them were "in a work and in a stew, all over the building"; that he did not see any games being conducted in the place; that he saw Wilson when he (witness) entered the place, but did not see Dougherty until possibly three or four minutes afterwards; that when he saw Wilson he was not doing anything but sitting at the table; that he did not see Dougherty do anything, and did not hear what he said to Mr. Carter.

Upon the conclusion of the evidence for the state, the defendants demurred to the evidence "and prayed the judgment of the court."

The defendants did not testify, but offered evidence and the cross-examination thereon did not tend to strengthen the evidence of the state.

The convicted defendants insist that the court erred in overruling their motion for a severance, and with this contention we do not agree.

Section 12 of ch. 26 of the Extra Session Laws 1916, p. 54, the act under which this prosecution is conducted, reads:

"Persons jointly charged with the violation of any of the provisions of this act shall be tried together, provided the court for good cause shown may grant a severance."

It thus appears that a severance in the instant case was not a matter of right on the part of the defendants, but rested entirely in the judgment of the court.

This prosecution is based upon section 1 of ch. 26 of said Session Laws, p. 54, which reads:

"Every person who opens, or causes to be opened, or who conducts, whether for hire or not, or carries on either poker, roulette, craps or any banking or percentage, or any gambling game played with dice, cards or any device, for money, checks, credits, or any representatives of value, or who either as owner or employe, whether for hire or not, deals for those engaged in any such game, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine of not less than five hundred dollars, nor more than two thousand dollars, and by imprisonment in the state penitentiary for a term of not less than one year nor more than ten years."

The evidence shows beyond all reasonable doubt that a fully equipped gambling house was open at the place and time alleged in the information, and that therein a roulette wheel was being operated for money, and that poker games, with chips and money before the players, were being played, but there is no evidence that the convicted defendants or either one of them opened, caused to be opened, conducted, or operated said roulette wheel, or said poker games, or any one of the games, interdicted by law, or that said convicted defendants "dealt for others engaged in such games," while there is undisputed evidence on the part of the state that another, other than said convicted defendants, conducted said place.

The evidence that said convicted defendants were, together with some 50 or 75 persons, in the said gambling house when it was raided, and that prohibited games were being conducted therein, and that one of them was, to-

gether with five, six, or seven others, at the roulette wheel, and had money and checks, which money he put in his pocket, and the other was sitting alone at a peculiarly constructed table upon which there were cards and money, which money he put in his pocket, is not sufficient to show beyond a reasonable doubt that the convicted defendants, or either one of them, opened, caused to be opened, or conducted said roulette wheel or other gambling games for money, or "dealt for those engaged in playing" any of the gambling games prohibited by said section 1, ch. 26, of Session Laws 1916, above quoted.

Considering the demurrer to the evidence and prayer for "the judgment of the court" as in effect a request for a directed verdict, we think the evidence insufficient to support a conviction, and that the court committed reversible error in not instructing the jury to acquit the defendants.

In *Pickerell* v. *State*, 5 Okla. Cr. 391, 116 Pac. 957, it is said:

"A person accused of crime is entitled to a fair and impartial trial, conducted according to the established principles of law, the most important of which is that the verdict of the jury shall be founded only upon competent evidence. If a defendant cannot be fairly convicted, he should not be convicted at all, and to hold otherwise would be to provide ways and means for the conviction of the innocent."

"It does not make any difference how guilty a man is; he ought to be tried in a fair and impartial manner, and according to law." *Jelts* v. *State*, 7 Okla. Cr. 733, 123 Pac. 1131.

"While it is well settled that this court will not disturb the verdict on account of the evidence to support it, the converse rule is equally well settled that it is not only

the province, but the duty, of the court to set aside such a verdict when it is contrary to the evidence, or where there is no evidence to support it." *Benson v. State,* 10 Okla. Cr. 16, 133 Pac. 271.

"Where the evidence only raises a suspicion of the guilt of the accused, it is insufficient to sustain a conviction. Suspicion is not proof, and the court should direct a verdict under such circumstances." *Nash v. State,* 8 Okla. Cr. 1, 126 Pac. 260; *High v. State,* 2 Okla. Cr. 161, 101 Pac. 115, 28 L. R. A. (N. S.) 162.

As the error pointed out must result in the reversal of the case, we deem it unnecessary to review the several other errors assigned.

The judgment of the lower court is reversed, and the cause remanded.

DOYLE, P. J., and MATSON, J., concur.