### LEWIS B. OMEY v. STATE.

No. A-3429.—Opinion Filed Sept. 26, 1921.

(200 Pac. 785.)

(Syllabus.)

Appeal and Error—Review—Insufficient Circumstantial Evidence of Guilt. Ordinarily this court will not consider the question of the preponderance or weight of testimony, but where the evidence tending to establish the guilt of the accused shows no malice towards the injured party and no expectation of private gain to the perpetrator, and the evidence of guilt is wholly circumstantial, and of doubtful probative force, and not inconsistent with a reasonable hypothesis indicating the innocence of the accused, it is the duty of this court to set aside a verdict founded upon such evidence.

Appeal from District Court, Woods County; W. C. Crow, Judge.

Lewis B. Omey was convicted of the larceny of a hog, and was sentenced to serve two years in the state penitentiary, and he appeals. Reversed and remanded.

C. H. Mauntel, J. W. Barry, and L. T. Wilson, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

BESSEY, J. On the 19th day of February, 1919, in the district court of Woods county, Okla., Lewis B. Omey was convicted of the crime of hog larceny, alleged to have been committed the night of the 22d of May, 1917. From the judgment of conviction and sentence, fixing his punishment at two years in the state penitentiary, he appeals. For convenience Lewis B. Omey, the plaintiff in error, will be referred to in this opinion as the defendant.

The facts and transactions out of which this prosecution grew, as shown by the testimony on the part of the state, were as follows:

That the defendant, Robert S. Evans and Charley Ringer, on the night of the 22d of May, 1917, drove from the home of the defendant to the home of Walter G. Howell, the prosecuting witness, a distance of 25 miles, in a big Buick Six car belonging to the defendant. That about a quarter of a mile from the residence of the prosecuting witness, and adjoining the public road, was a hog lot, in which was kept, along with other hogs, a big boar hog, weighing about 300 pounds, and the subject of the larceny in this case. That these parties drove this Buick car from the beaten path of the road towards the fence inclosing this hog lot. That they entered the hog lot, killed this boar hog with an axe, dragged its body out of the lot, placed it in the Buick car, and drove by the nearest traveled road, a portion of which was through fields and pastures, to the defendant's home, where they skinned and dressed the hog and hung the dressed portions in the blacksmith shop on the premises of the defendant. That the entrails and offal lay scattered on the ground in various parts of the premises.

That early on the morning of the 23d of May the prosecuting witness discovered that this particular hog was missing, and noticed that there was blood on the ground near the fence parallel to the road, and saw evidences on the ground and fence indicating that the hog might have been dragged through the fence to where an automobile had stood. That this automobile was equipped with diamond tread tires, the tread of which was considerably worn. That the prosecuting witness immediately communicated with the sheriff's office and that he and the sheriff the same morning followed these diamond tread tracks to near the home of the defendant, arriving there about 9 o'clock.

It was the theory of the state: That when the prosecuting witness and the sheriff got to the defendant's place the meat of this hog was hanging in the blacksmith shop, and that while the sheriff and the prosecuting witness went on beyond the defendant's place in search of the lost automobile track this meat was carried away. As the sheriff and the prosecuting witness were leaving the defendant's premises in search of this trail they met a neighbor, Frank Axtell, going towards the defendant's house, and informed him privately of the theft of the hog, and asked him to remain on the defendant's premises and watch the movements of the defendant and others who might be there until they returned. That in 20 or 25 minutes they did return, and found the offal and parts of the slaughtered hog, but found none of the dressed meat. That while the sheriff and the prosecuting witness had been away looking for the lost trail the defendant and Axtell were down at the barn, but not out of sight of the other farm buildings, and it was the theory of the state that while they were there Evans and Ringer, who were on the premises at the time, took the meat from the blacksmith shop, past the garage, and placed it in a Ford car belonging to Evans, covered it with a tarpaulin, and drove past the home of a neighbor, Mrs. Lemon, over across a creek, and there buried the two halves of the hog in the creek bed, about 500 yards from where the road crossed the creek. That some days later these portions of the dressed meat were found in the place where they had been buried, and that there were identifying marks on the portions of the carcass found indicating that it was the boar hog belonging to the prosecuting witness.

Originally the defendant Omey, Evans, and Ringer were jointly informed against for the larceny of this hog. The evidence on the part of the defendant Omey, corroborated by a tenant and his wife and by Ringer, alleged codefendant,

was to the effect that Omey and Ringer stayed all night at the Omey ranch the night in question. Other witnesses testified that Evans, the owner of another ranch near by, was at home all of that particular night, and that no one of the three ever went to the Howell place or into that vicinity the night in question, and that they had nothing whatever to do with the taking and disposing of this hog.

The evidence shows that the defendant was a farmer and ranchman, owning 1,640 acres of land in Woods county, where he kept a large number of cattle, hogs, and other live stock; that he owned a fine residence in Alva, where his wife and children lived during the winter months, in order to permit the children to attend school; that he was not acquainted with the prosecuting witness, and knew nothing about the location of his ranch, and had never met him until the morning after the alleged theft, when he arrived at defendant's place with the sheriff.

It was the theory of the defendant that Jim McMoran, a neighbor ranchman with whom he was on bad terms and had been for several years, had placed the portions of offal, hide, and other identifying pieces of the hog on defendant's premises, or that it had been done by some one else under McMoran's direction, or that it had been done by some other enemy of the defendant. The testimony shows that it was McMoran who discovered the place where the meat was buried. When the sheriff confronted the defendant with the pieces of offal and other portions of the hog found on his premises the defendant stated that he did not know how they came there, and he maintained that attitude throughout the trial.

The record of the testimony in this case is voluminous, covering about 1,000 pages, all of which has been carefully examined by this court. It would serve no good purpose to

analyze the testimony in detail. The evidence upon which this conviction was based was wholly circumstantial, and that portion of it casting suspicion upon the defendant is not, in our judgment, sufficient to support the verdict, for the reason that it does not exclude to a moral certainty a number of other reasonable hypotheses consistent with his innocence.

It was the theory of the state, and apparent from the testimony, that the defendant could not have committed this larceny and disposed of the remains of this hog without the assistance of Evans and Ringer, or of some other confederates. The testimony on the part of the defendant shows that John Hampton and his wife lived in a part of defendant's ranch house, and that defendant and Ringer slept in the house that night; that about 12 o'clock that night Reuel Schrimpscher, a neighbor ranchman, went through the defendant's ranch on his way home from some point in Kansas, and left in the Buick car belonging to the defendant a slicker that he had borrowed the day before. The testimony of the tenant Hampton is to the effect that before going out to his work on the place early that morning, and before the arrival of the sheriff and the prosecuting witness, he went into the blacksmith shop to get a lister share, and that at that time there was no part of the dressed carcass of a hog hanging in the blacksmith shop. Besides the disinterested witnesses who testified that the defendant and Ringer were at the defendant's house all of that night, the defendant, as well as Ringer and Evans, took the stand and gave a logical, reasonable account of themselves and their actions on the particular night in question, and maintained that they knew nothing about the alleged theft, and nothing about the parts and offal found, or claimed to have been found, on the defendant's premises on the morning following.

There is also direct testimony by disinterested witnesses

that Ringer and Evans did not convey the dressed carcass of this hog to the place where it was found buried, and there is no evidence that they were in that vicinity; on the contrary, there is evidence that they took this Ford roadster, passed over the ravine and creek at the regular crossing, continued on the road on the opposite side and passed on over the hills beyond, where they went to get some cane seed; that they did not stop in the canyon or ravine, and could not have been on that morning at the place where this meat was found buried. This conclusion is corroborated in part by Mr. Axtell, a witness for the state, who had been instructed by the sheriff to watch the defendant and others while he was in search of the lost trail of automobile tracks. From the testimony of this witness it appears that it would have been impossible for these two men to have taken the two halves of a 300 pound hog and placed it in this Ford and covered it up with a tarpaulin without his having known about it. Upon this point it seems that the testimony of Axtell was not pleasing to the county attorney, and he sought by cross-examination of his own witness to get him to state in effect that this meat might have been taken out of the blacksmith shop without his having known about it.

In cases of this character, where the state relies wholly upon circumstantial evidence not of a conclusive nature, it is proper to look carefully into the motive of the person accused. We cannot understand why a person situated as this defendant was, with cattle and hogs of his own, would go 25 miles to the home of a neighbor ranchman whom he did not even know and with whom he had no quarrel, thus eliminating all suspicion of malice, and slaughter a boar hog weighing 300 pounds, and selected out of a pen where there were other hogs better fitted for slaughter for human consumption. Unreasonable as this seems upon its face, if we can assume

that he did do this, it seems probable that he would take some precaution against being discovered, and that he would not permit the offal and certain portions of the feet, hide, and genital organs of the animal to be scattered about his premises in the manner shown by the testimony.

Ordinarily this court will not consider the question of the preponderance or weight of testimony, but where the evidence tending to establish the guilt of the accused shows no malice towards the injured party and no expectation of private gain to the perpetrator, and the evidence of guilt is wholly circumstantial and of doubtful probative force, and is not inconsistent with a reasonable hypothesis indicating the innocence of the accused, it is the duty of this court to set aside a verdict founded upon such evidence. Sies v. State, 6 Okla. Cr. 142, 117 Pac. 504; Nash v. State, 8 Okla. Cr. 1, 126 Pac. 260; De Bose v. State, 18 Okla. Cr. 549, 197 Pac. 176, 8 R. C. L. 226.

In this case, from the testimony as a whole we suspect that this hog was taken from the pen of the prosecuting witness on the night alleged, and that the dressed carcass of this particular hog was buried at the place disclosed by the evidence, and that the offal, feet, hide and other identifying parts of the hog found at the places on the premises of the defendant were probably portions of this particular hog, but the testimony that the defendant placed them there is not convincing. Other reasons might be given for arriving at the conclusion we have reached, but without further comment we hold that the testimony in this case was insufficient to support the verdict, and that the trial court should have directed a verdict for the defendant, as was done in the case of the codefendant Evans.

The case is therefore reversed and remanded.

DOYLE, P. J., and MATSON, J., concur.