BARNEY SELFRIDGE v. STATE.
No. A-4276. Opinion Filed April 10, 1924.
(224 Pac. 742.)

(Syllabus.)

1. Trial—Improper Questions to Accused Reversible Error, Although Objections Sustained. Where the prosecuting attorney subjected the defendant to a series of immaterial questions as to other offenses, and questions tending to degrade and belittle him, there is ground for reversal, though objections to such questions were sustained.

2. Trial—General Objections Sufficient to Wholly Incompetent Evidence. Where evidence is wholly incompetent, a general objection thereto is sufficient.

**3.**  **Trial—Reversal Where Prosecution Persisted in Asking Prejudicial Questions, Though Objections Sustained.** A conviction will be set aside where the prosecuting attorney, without reprimand from the court, persisted in asking improper and prejudicial questions on his cross-examination of the defendant, notwithstanding the sustaining of objections thereto.

Appeal from County Court, Pontotoc County; Tal Crawford, Judge.

Barney Selfridge was convicted of a violation of the prohibitory liquor law, and appeals. Reversed and remanded.

King & Crawford, for plaintiff in error.

The Attorney General, for the State.

DOYLE, J. The plaintiff in error was convicted and in accordance with the verdict of the jury sentenced to pay a fine of $50 and be confined in jail for 30 days for the offense of conveying intoxicating liquor, alleged to have been committed December 10, 1921, in the city of Ada, by transporting three six ounce bottles of whisky from Jim's Restaurant, on the north side of Main street, to Ben Beam's barber shop on the south side of Main street in said city.

Bob Duncan, sheriff, the sole witness for the state, testified:

"I have known the defendant, Barney Selfridge 15 or 20 years; on the date alleged I called him over from in front of Jim's Restaurant and told him I had a couple of warrants for him; he said he wanted to go to Beam's barber shop; we walked in, and into the back end; he said, 'I haven't carried a gun in a long time.' I said, 'What have you got on you now?' and he drew a bottle out of his pocket and broke it; then broke two more bottles; I could smell whisky very plainly, corn whisky; the bottles were four to six ounce bottles. He did not have any gun on him; I then went to his house and found some whisky."

The state rested, and the defendant asked the court to instruct the jury to return a verdict of not guilty. which the court refused to do.

Nettie Selfridge, wife of the defendant, testified:

"I remember when Sheriff Duncan came to our house with a search warrant; I was at home with my four girls, there was no whisky there and there has never been any whisky at our house to my knowledge; I did not pour any whisky in the tub of dirty water."

Bertha Selfridge testified:

"My age is 16 years; I live with my father and mother; I was at home when Sheriff Duncan came there; my father was not there at that time, there was no whisky on the place that I know of; Sheriff Duncan took away a fruit jar of dirty water."

Nevada Selfridge testified:

"I am 15 years old; I go to high school; I was at home when the officers came; they took a fruit jar of dirty water with them; they picked it up in the wash tub."

E. W. Maples testified:

"I was running the barber shop when Sheriff Duncan and Barney Selfridge came in; I heard the breaking of glass on the cement floor in the back room; after they left I went back and could not smell any whisky there; I thought I heard one or two bottles break."

The testimony of the defendant on his own behalf is as follows:

"I was standing just back of my car; the sheriff called to me and said, 'Come here; I have a warrant for you;' we went into the barber shop, and I asked Mr. Maples to go on my bond; he said, 'All right;' we went into the back room; the sheriff said, 'You have got a pistol on right now.' I said, 'I have not owned a pistol in 8 months; I have hair

tonic in this bottle; I have got another bottle in my left pocket, containing listerine for my tonsils;' I pulled it out and he knocked it out of my hand; I never did sell any whisky; I have never been charged with selling whisky before; I used to be a deputy sheriff; I did not have any whisky at my home.''

On cross-examination the defendant was asked the following questions:

''Q. You remember last summer going out in Bill James' tomato patch to dig up some whisky and Bill threw a gun on you? A. I went out there and he threw a gun on me.

''Q. What were you doing out there? A. I will tell you just the straight of it. The little boy of mine was working in the garden patch; he left the shovel out there and I went out there to get the shovel, and Mr. James threw a gun on me and wanted to know what I was doing there?

''Q. Didn't you dig up a bottle, and you and Bill James take a drink? A. No, sir.

''Q. Did you have any out there? A. No, sir.

''Q. Well the truth is you have been hauling it around in that car the last six months? A. No, sir.

''Q. Never hauled a bit? A. No, sir.

''Q. Been hauling whores around in it haven't you?

''By the Court: Objection sustained.

''Q. Maples tell you he would go on your bond? A. Yes, sir; but I wanted to get some one else. It takes two, don't it?

''Q. No, sir; you should know if you are going to run for sheriff again. You didn't have to get him to get another man? You were not about half drunk the day he arrested you? A. No, sir.

''Q. Hadn't drank a drink that morning? A. No, sir; I had not.

"Q. I will ask you if you are the same Barney Selfridge that swore out a warrant for ruining your daughter and then tried to swear out a warrant for another man for ruining your daughter?

"By the Court: Objection sustained."

J. E. Martin testified:

"I work in Holly's drug store; I remember Selfridge coming in there with a hair tonic prescription; I filled it; it was prepared not for a beverage, but for a hair tonic. It carried about 50 per cent. of alcohol; as I remember it was an 8 or 12 ounce bottle."

On cross-examination witness was asked these questions:

"Q. You seen defendant hauling women around in that car at night?

"By the Court: Objection sustained.

"Q. You seen him hauling whores around in that car? Women you know to be whores?

"By the Court: Objection sustained.

"Q. You know he has been hauling whisky around in it, don't you? A. No, sir."

One of the grounds of the motion for new trial and assigned as error is that the defendant was prevented from having a fair and impartial trial by reason of the misconduct of the county attorney in asking improper questions on cross-examination of the defendant and of his witness Martin.

Obviously the questions asked were entirely improper, wholly irrelevant, and were calculated to prejudice the minds of the jury. The prosecuting attorney represents the entire people, including the defendant, and, while it is commendable to industriously secure and present all the evidence which tends to show the guilt of the defendant, it certainly will

not be contended that it is fair on the part of the state to persistently interrogate witnesses as to matters immaterial and grossly incompetent, to the great prejudice of the defendant.

In Pickrell v. State, 5 Okla. Cr. 391, 116 Pac. 957, we said:

"Such conduct tends to destroy public respect for the prosecuting attorney's office and invites contempt for the dignity of the court. A person accused of crime is entitled to a fair and impartial trial, conducted according to the established principles of law, the most important of which is that the verdict of the jury shall be founded only upon competent evidence. If a defendant, cannot be fairly convicted, he should not be convicted at all, and to hold otherwise would be to provide ways and means for the conviction of the innocent."

And see Watson v. State, 7 Okla. Cr. 590, 124 Pac. 1101.

For the errors aforesaid, the judgment is reversed and the cause remanded for further proceedings according to law.

MATSON, P. J., and BESSEY, J., concur.