**Robert Lynn MASSENGALE, Appellant,**

v.

**The STATE of Oklahoma,
Appellee.**

**No. F–75–263.**

Court of Criminal Appeals of Oklahoma.

April 7, 1976.

Red Ivy, B. Jack Taylor, Chickasha, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

Robert Lynn Massengale, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Grady County, Case No. CRF–74–69, for the offense of Unlawful Possession of Marihuana With Intent to Distribute, in violation of 63 O.S.1971 § 2–401 and was sentenced to two (2) years' imprisonment. From this judgment and sentence, a timely appeal has been perfected to this Court.

Mrs. Vivian Williams testified that she was the occupant of the east apartment on the lower floor of the apartment building located at 1916 South 19th Street, Chickasha, and during the three weeks prior to June 10, 1974, she saw the defendant enter and leave the upstairs south apartment in the same building on a number of occasions.

Mrs. John Bailey testified that she was the manager of the apartment building at 1916 South 19th Street in Chickasha, which contained four apartments, two upstairs and two downstairs. On the morning of June 10, 1974, she went to clean the upstairs south apartment and found it to be locked. The apartment was supposed to be unoccupied as of May 22, 1974, when one Bill Terry vacated the apartment. She gained entry through a window and then discovered clothing and other signs of occupancy and thereafter she notified the police. She testified that she was the only person in charge of the apartment building at that time and that she did not give the defendant permission to occupy the premises.

Danny Joe Miller testified that he was employed as a detective with the Chickasha Police Department and was so employed on June 10, 1974, on which date he and Detective Danny Wheeler answered Mrs. Bailey's call. He stated that he arrived at the apartment at approximately 4:45 p.m. on that day and observed clothing in the closets, clean towels, toilet paper and shaving equipment in the bathroom, food in the refrigerator, and household appliances including a television and stereo. He testified that "It just had a general appearance of somebody living there." The remainder of his testimony concerned the identification of State's Exhibits discovered and marked by him at the apartment and included the following: Several plastic baggies containing a leafy substance found in a chest of drawers; similar baggies found in a black box; 17 such baggies contained in a large plastic pouch found under the couch; a planter containing certain plants; and articles of clothing and personal effects upon which defendant's name appeared.

Michael Rex McGeehon testified that he was a forensic chemist for the Oklahoma State Bureau of Investigation and that on June 12, 1974, he received from Detective Miller State's Exhibits Nos. 1 through 6, upon which he performed analyses which revealed the contents in the baggies to be marihuana. An analysis of the plant clippings given him by Detective Miller revealed the plant to be cannabis sativa L, commonly known as marihuana.

Danny Wheeler testified he was employed as a detective with the Chickasha Police Department and was so employed on June 10, 1974, when he accompanied Detective Miller to the apartment located at 1916 South 19th Street in Chickasha. His testimony essentially corroborated that of Detective Miller.

Delbert Mangus testified that on June 10, 1974 he occupied the north apartment on the upper floor of the apartment building located at 1916 South 19th Street, and that during the three weeks prior to June 10, upon arriving home from work at approximately 6:00 p.m., he frequently saw

the defendant. He also observed the defendant removing "some things from his apartment down the hall" on June 10, 1974, around midnight.

Arthur Linville testified he was a narcotics agent employed by the Oklahoma Bureau of Investigation, and he stated that marihuana is generally sold on the street in one ounce plastic bags for approximately ten ($10.00) dollars to fifteen ($15.00) dollars. He further stated that an average marihuana cigarette weighs approximately one half gram, resulting in approximately 56 marihuana cigarettes from a one ounce bag. Further, he testified that the marihuana involved, State's Exhibits Nos. 1 through 4 and 6, contained approximately 429 grams of usable marihuana, equivalent to an estimated 858 marihuana cigarettes and had a street value of approximately $210.00 to $315.00. The State then rested.

The defendant took the stand and testified in his own behalf that he was 19 years old, and lived with his mother at 730 Minnesota, in Chickasha. He stated that he had lived in the apartment in question for several weeks with one Bill Terry, but had moved out prior to the police search on June 10, 1974, and had merely kept some belongings there. He further testified that he was a very heavy marihuana smoker, consuming as many as 26 cigarettes a day and he admitted purchasing the marihuana which was found in the apartment. He further stated that the entire purchase included nearly a pound and a half of marihuana for which he had paid $100.00 and at the time of the purchase was contained in 27 baggies. He also alleged that his reasons for making such a large purchase were the marihuana's relatively low price and his relatively heavy demand. He expressly denied any intent to distribute the marijuana.

On cross-examination the defendant admitted that he had access to marihuana when he needed it and was therefore not in urgent need of a supply as large as the one involved.

Dan Powers, a high school friend of defendant, was present when the defendant purchased the marihuana and corroborated defendant's account of the transaction.

Danny Williams corroborated the previous testimony of Delbert Mangus and of his mother, Vivian Williams. He also testified that he had seen other individuals entering and leaving the apartment in question by way of the window.

■ The defendant's first assignment of error asserts that certain photographs were improperly admitted and displayed to the jury, with said photographs containing writing on the back prejudicial to the defendant. The writing apparently described the contents of the apartment as represented by the photographs and further contained such allegedly prejudicial words as "pot," "pot pot," and "baggie." The defendant cites *Hildebrandt v. State*, Okl.Cr., 507 P.2d 1323 (1973), alluding to this Court's language in that case directing that writings on photographs should be removed prior to submission to the jury in all cases subsequent to *Hildebrandt*, supra.

In the *Hildebrandt* case the photographs admitted into evidence bore the legend, "HILDEBRANDT R G POLICE 68 405 DEPT LAWTON 12 1671 OKLA." In that case the defendant argued that the photograph admitted indicated a prior arrest which was irrelevant and prejudicial to his case. This Court found the relevancy of the photograph outweighed the possible prejudicial effect, and thus the trial court's ruling was not disturbed, but the Court directed that in all future cases any writing on photographs be removed prior to submission to the jury.

The instant case is readily distinguishable from the *Hildebrandt* case, supra. In the instant case, the trial court ruled that the photographs would be admitted upon the condition that prior to admitting them into evidence the writing on the back of said photographs be "blocked off." Through apparent inadvertence the prosecutor failed to comply with the condition

dictated by the court and the jury thus viewed the photographs during trial without the writing removed. Later, the photographs were given to the jury for use in their deliberation, but the writing was mostly obliterated prior to the jury's retiring for deliberation.

The matters which the photographs purported to represent were essentially described in testimony at trial and therefore the writing on the backs of the photographs was at most cumulative to the testimony at trial. However, we conclude that it was error to admit the photographs prior to the removal of the writing as dictated by the court because some of the writing would have been hearsay, expressing some factual conclusions.

However, the admission of the photographs with the writing, in our opinion, did not influence the verdict and was, therefore, but harmless error See, 20 O.S.1971, § 3001, and *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). For the foregoing reasons we reject the defendant's first assignment of error.

The defendant's final assignment of error asserts that the prosecutor upon direct examination of State's witness Arthur Linville repeatedly propounded improper questions in direct contravention of defendant's motion in limine which was sustained by the court prior to the opening of trial. The defendant asserts that the repeated asking of incompetent questions, which clearly had for their purpose the intimation of something that is either not true or not capable of being proved if true, is improper conduct on the part of the prosecuting attorney. Defendant cites *Pickrell v. State,* 5 Okl.Cr. 391, 116 P. 957 (1911); *Watson v. State,* 7 Okl.Cr. 590, 124 P. 1101 (1912); *Selfridge v. State,* 27 Okl.Cr. 22, 224 P. 742 (1924); *Barnhill v. State,* 39 Okl.Cr. 29, 263 P. 153 (1928), and *Bean v. State,* 77 Okl.Cr. 73, 138 P.2d 563 (1943). We do not disagree with the general rule as cited by defendant, but we are of the opinion that the same is not applicable in this case.

We first note the record reflects that the pretrial motion in limine filed by defendant was not ruled upon by the trial court but was apparently taken under advisement. We further note that all of the questions propounded by the prosecuting attorney to witness Linville, and objected to by the defendant, were sustained by the trial court and, thus, the defendant received the favorable ruling. These rulings being in the defendant's favor, we are of the opinion that there is nothing upon which to predicate error, as we do not find the questions in and of themselves to be prejudicial in nature. For this reason we find the defendant's last assignment of error to be without merit.

For all the above and foregoing reasons, the judgment and sentence appealed from is, accordingly, *AFFIRMED.*

BRETT, P. J., and PARR, J., specially assigned, concur.

BUSSEY, J., recuses.