## JOHN MCCORMICK V. STATE OF NEBRASKA.

FILED NOVEMBER 19, 1902.   No. 12,789.

1. **Prosecution for Murder:** STATEMENTS OF DECEASED: RES GESTÆ. In a prosecution for murder, testimony of statements made by the deceased to a third party immediately preceding the act constituting the crime charged and bearing a causal relation thereto, *held* properly admissible in evidence as a part of the *res gestæ*, although not made in the immediate presence of the defendant, there being evidence tending to prove that he heard the statements and acted because thereof.

2. ——: ——: ——: MOTIVE. *Held*, also, that the testimony of such statements made by the deceased was admissible for the purpose of proving motive.

3. **State's Testimony in Rebuttal:** INTOXICATION: DELIBERATION: PREMEDITATION. Testimony of witnesses for the prosecution, offered in rebuttal to prove that the defendant was not by reason of excessive use of intoxicants and the condition of his mind, incapacitated from knowing the nature and quality of the act with which he was charged, nor from deliberating and premeditating thereon, examined, and the admission thereof *held* not to be erroneous.

4. **Evidence:** OBJECTION: FOUNDATION. An objection that evidence is incompetent, irrelevant, and immaterial does not raise the question of the sufficiency of the foundation laid for the admission of such evidence.

5. ——: CHARACTER: ARREST: CROSS-EXAMINATION. Where a defendant has offered evidence to show his previous good character as being a peaceful, law-abiding citizen, it is not error on cross-examination to ask the witness if he has known of the defendant's being arrested.

6. **Evidence of Arrest:** MOTION TO STRIKE. Where a witness has testified in rebuttal that the defendant had been arrested prior to the time of the charge for which he was being tried, and such evidence is stricken out on motion of the defendant, he can not predicate error thereon.

28

7. **Continuance: ABSENT WITNESS: ADMISSION: INSTRUCTION.** Where the prosecution, to avoid a continuance, admits that the absent witness will testify as alleged in the affidavit for continuance and such affidavit is admitted in evidence in lieu of the testimony of the absent witness, it is not error to charge the jury that the state does not admit the truth of the matter alleged in the affidavit, but only that the witness would testify as therein alleged, and that such evidence should be weighed and considered the same as the testimony of other witnesses in the case.

8. **Evidence: INSTRUCTIONS.** Instructions set out in the opinion as to the admission of evidence concerning the previous good character of the defendant, held without error.

9. **Cumulative Instructions.** Where a requested instruction contains a proposition substantially covered and included in one given, it is not error to refuse such requested instruction.

10. **Instruction: CONJUNCTIVE: APPARENT ERROR.** An instruction otherwise unobjectionable, which omitted the conjunctive "and" between the words "fairly" and "truthfully," held, not prejudicially erroneous because of such apparent error.

11. **Objection to Sentence.** Section 495 of the Criminal Code is mandatory, and it is error to pronounce sentence after a verdict of guilty without the defendant's being informed by the court of the verdict of the jury, and asked whether he has anything to say why judgment should not be pronounced against him.

12. ———: **REVERSAL.** Where, after a verdict of guilty, sentence has been pronounced without complying with the provisions of said section 495, the judgment will be reversed and the cause remanded for judgment and sentence in conformity with the requirements of such section.

ERROR from the district court for Otoe county. Indictment for felonious homicide. Tried below before JESSEN, J. Plea of not guilty. Trial. Conviction. Sentence twenty years at hard labor. Defendant brings error. *Reversed.*

The record in the trial court shows the following proceedings subsequent to verdict:

Now on this 1st day of March, 1902, that being a day of the January, 1902, term of said court, comes W. W. Wilson, county attorney, on behalf of the state of Nebraska, also comes the defendant, John McCormick, in custody of the sheriff and accompanied by his counsel, John C. Wat-

son and John V. Morgan. Motion for a new trial is over-
ruled by the court, to which defendant excepts.

And now the county attorney aforesaid moves the court
for judgment upon the verdict heretofore rendered herein,
to wit: "Murder in the second degree," which motion is
sustained by the court.

And now the said defendant, John McCormick, being
in open court and standing at the bar thereof is asked by
the court if he has anything to say why the sentence of
the court should not be passed upon him, and he having
replied that he had not, the court thereupon sentenced
the said defendant as follows: It is considered and fully
adjudged by the court that the defendant, John McCor-
mick, be confined and imprisoned in the penitentiary of
the State of Nebraska at Lincoln, Nebraska, for a term of
twenty (20) years from this date, at hard labor (Sundays
excepted), and to pay the costs of this prosecution taxed
at $——.

A major part of the records of criminal convictions
which come to this court are deficient in this same par-
ticular. This note is inserted for the attention of prosc-
cutors.—W. F. B.

*John C. Watson* and *John V. Morgan* (*Robert Ryan,* of
counsel) for plaintiff in error.

*Frank N. Prout, Attorney General, Norris Brown* and
*William B. Rose,* for the state.

HOLCOMB, J.

On information by the county attorney, the defendant
was arraigned and tried on the charge of murder in the
first degree. The trial of the accused to the court and a
jury, on the issue raised by a plea of not guilty, resulted in
a verdict finding the defendant guilty of murder in the
second degree, as charged in the information, on which
verdict the court sentenced him to imprisonment in the
penitentiary for a period of twenty years. For the pur-
pose of having the record of his conviction reviewed, the
defendant has brought the cause here by a proceeding in
**error.**

The deceased was the proprietress of a brothel in Ne-
braska City, and the theory of the state was that the ac-
cused, who was a frequenter of the place, visited her home
on the night of the homicide and hearing her speak to an-
other visitor, who was then with her in a room of her house,
was angered thereby and in a rage of jealousy called her
to the door by ringing the door bell, and after requesting
and being refused admittance, fired the fatal shot through
a closed screen door, from the effect of which the deceased
expired in fifteen or twenty minutes. There was no direct
evidence save his own admissions that the defendant heard
the remarks made by the deceased to the third party men-
tioned. That he did hear these remarks, and because
thereof committed the homicidal act, seems to be an in-
ference altogether warranted from the evidence. The
action of the defendant immediately after the utterance
thereof, and his own statements at the time of the com-
mission of the homicide, established a direct relation. be-
tween the words spoken by the deceased to the third party
and the act of the defendant in firing the fatal shot which
immediately followed. It is contended that the court
erred in permitting a witness to testify what was said by
the deceased to the third party immediately preceding
the shooting. Objection was made to the testimony on the
ground that it was immaterial, not shown to be in the
presence of the defendant, hearsay, and no part of the *res
gestæ.* The testimony objected to, we are of the opinion,
was properly admitted as a part of the *res gestæ.* It is
shown by the evidence to be so intimately connected with
the commission of the homicidal act, and to bear such
causal relation thereto as to render it a part of the prin-
cipal transaction, and might fairly be admitted in evidence
on that ground alone. It is true the defendant was not in
the immediate presence of the deceased and the person
with whom she was conversing, but the acts immediately
following and the statements made by the defendant when
he had shot the deceased, are wholly unexplainable on
any other theory than that he was standing just outside of

the room where the conversation took place, overheard what was said, and acting thereon, rang, and requested admittance into the house, and upon being refused, fired the shot which caused her death. As is said in *Sullivan v. State,* 58 Nebr., 796, 800, "They were parts of the *res gestæ,* events incident to the main transaction; they were concomitant acts speaking through the principal actor. In point of time they were closely related to the homicide and between it and them there was an immediate causal relation. '*Res gestæ,*' says Wharton, 'are events speaking for themselves, through the instinctive words and acts of participants, not the words and acts of participants when narrating the events. What is done or said by participants, under the immediate spur of a transaction, becomes thus part of the transaction, because it is then the transaction that thus speaks.' Wharton, Criminal Evidence [8th ed.], sec. 262." Other authorities referred to in the same opinion might be cited here, but reference thereto will, no doubt, suffice for the purpose of disposing of the question now under consideration.

The testimony complained of is, no doubt, also admissible for the purpose of proving the motive actuating the defendant in the commission of the crime with which he was charged. There was evidence tending to show that he could readily have heard what was said in the room by the deceased just prior to the killing, and that he was standing in a waiting attitude for a brief period of time before he rang for admission; that the remarks were made by the deceased just before he sought to gain admittance, and on his request to be admitted and the refusal, he shot the deceased; and that immediately thereafter, upon being admitted to the room, his statement in explanation of his reason for committing the act was based solely on what had been said by the deceased to the third party referred to, which statement was admitted in evidence over defendant's objection. No motive for the commission of the act appears, save on the theory that the remarks of the deceased which were objected to were overheard by de-

fendant, were acted upon, and became a moving cause leading to the tragedy following immediately thereafter. Connected as these remarks were with the defendant as furnishing an explanation or cause for the tragedy immediately following, and the motives actuating him, the testimony was properly admissible, and no error was committed in overruling defendant's objections thereto.

It is next contended that certain testimony of nonexpert witnesses as to the condition of the defendant and the state of his mind at the time of the commission of the alleged offense was erroneously admitted. In order to excuse the act, the defendant undertook, first, to show that it was the result of an accident; and secondly, because he was afflicted with an ailment or disease called diabetes, and from excess of drinking intoxicants, his mind was in such condition at the time of the alleged offense as to render him mentally incapable of knowing and realizing the nature and quality of the act, and from deliberating and premeditating thereon and of distinguishing between right and wrong with respect thereto. Some evidence was introduced to show that he was suffering from the disease mentioned, and that the tendency of the disease in its advanced stages was to destroy the mind. Much evidence was introduced by the defendant to show that he had been drinking heavily for several days prior to the act and was at the time so intoxicated as to dethrone his reason, and render him incapable of knowing or realizing what he was doing. To meet evidence of this character, non-expert witnesses, after showing that they were acquainted with the defendant and had known him for some time, were permitted to testify over objection as to the degree of his intoxication on the night of the homicide and also with reference to his mental condition, that he appeared to be the same as usual and acted the same as men usually do and that in their opinion, he was able to distinguish right from wrong. It is objected that this evidence is incompetent, irrelevant and immaterial. We hardly think so. Whether the defendant was so intoxicated as to be incapable of pre-

meditating or deliberating over the act he was charged with committing, became quite important in view of the evidence introduced by the defense. Much of the evidence objected to was introduced for the purpose of showing that while he had been drinking to some extent he was altogether rational, in possession of all his mental faculties and had knowledge of what was passing around him. While the foundation for questions with reference to his mental condition as to being sane or insane was not, possibly, as sufficiently well laid as might be insisted on, no objection was made on that ground. It is manifest that the question of sanity or insanity was not one of the real issues in the case. There was no pretense that he was not responsible for the act save on the ground that by the excessive use of intoxicants he became incapable of deliberating as to his course of conduct, and of realizing or knowing the nature of the act of which he was charged. The testimony objected to was admitted in rebuttal to overcome the evidence of the defense tending to show intoxication as an excuse for the crime charged, and was, we are satisfied, admitted without error to the prejudice of the defendant.

The defendant introduced evidence for the purpose of showing his previous good character, and an exception was taken because the prosecution was permitted on the cross-examination to ask the witnesses whether they had known of the defendant ever having been arrested. The testimony was proper on cross-examination but all answers to the questions objected to are in the negative, so that no prejudice has arisen in any event. One witness in rebuttal was permitted without objection to answer that the defendant had been arrested, but on objection and motion of counsel the answer was stricken out, so that no prejudice to the defendant was caused thereby.

Error is also assigned in the giving of an instruction by the court to the jury with reference to the testimony of an absent witness, the prosecution having admitted that such witness would testify as it was alleged he would in an

affidavit for a continuance, such affidavit being thereupon admitted in evidence in lieu of the testimony of the absent witness. The court instructed the jury with reference to the admission of such affidavit in evidence that the prosecution admitted that the said witness would, if present, testify to the facts alleged, but did not admit such facts to be true nor that the said witness was present at the time and place alleged in the affidavit; and that such statements must be weighed by the jury the same as the testimony of any other witness and given such credit as the jury thought from all the facts and circumstances shown in the case they were entitled to. The affidavit for a continuance alleged that the absent witness, if present, would testify that he was at the house of the deceased at the time of the homicide, and to other facts connected with the transaction as narrated in the affidavit. The instruction told the jury, in substance, that the state did not admit the truth of the affidavit but did admit that the witness would testify as therein alleged, and that such testimony was to be taken and weighed the same as that of any other witness. This, we think, a correct exposition of the law, and no merited criticism can be urged against the instruction. The state was not bound to admit that the witness was present at the time and place of the homicide, but only that he would testify that he was present, and it is in this respect that the instruction is complained of. The court, in giving the instruction, was not discrediting the testimony of any one witness, but stating a correct rule of law regarding the scope and effect of the admissions made by the state as to the affidavit made for a continuance, and its reception in evidence in lieu of the testimony of such absent witness.

Complaint is also made of instruction number 18, given by the court, which is as follows: "The defendant has in this case placed his previous character and reputation, as to being a man of peace and quiet, in evidence. If you find that previous to this difficulty he sustained a good reputation for peace and quiet, you will weigh it in his favor for

what, in your judgment, you may think it is worth. Where the question to be determined by you may be close, it should be sufficient to turn the scales in his favor. If, however, you are satisfied that, notwithstanding his former good reputation, the proof shows in this case, beyond a reasonable doubt, that he is guilty of either of the crimes of murder in the first degree, or second degree, or manslaughter, as the same have been heretofore defined in these instructions, then the former good character or reputation of the defendant would not be a defense in this action." It is contended that the last sentence assumes that proof of good character was offered as a defense, and this was error. While it may not have been offered as a defense in the sense of justification or excuse for the act, the proof was offered to establish good character, which was proper to be considered with all the other evidence in determining whether guilt of the crime charged was established beyond a reasonable doubt. It is evidence offered by the defendant of facts deemed material in establishing his defense on a plea of not guilty and for the purpose of inducing the jury to believe that it was improbable that he, as a person of good character, would have committed the act charged against him. The statement in the instruction that where the questions to be determined are close, good character is sufficient to turn the scale in favor of the defendant was certainly as favorable to him as he could rightfully ask. If there exists any prejudice in the instruction it is against the prosecution rather than the defendant. We find no prejudicial error in the instruction complained of.

The court gave the usual instruction with respect of the necessity of the jury being satisfied from the evidence beyond a reasonable doubt as to all the essential ingredients of the crime charged before they could convict. The court refused an instruction requested by the defendant to the effect that if any one of the jury after having considered all the evidence in the case and after having counseled with his fellow jurymen, entertained a reasonable doubt of the defendant's guilt, then the jury could not find the defend-

ant guilty. The instruction given by the court covered the subject fully as well as the one requested, and was addressed to each individual juryman as well as to all of them collectively. It was required that each and all of them should find the essential facts beyond reasonable doubt before a verdict of guilty could be returned. It was not necessary to reinforce the instruction given with the one requested, which served no useful purpose in the case, and no error was committed in refusing it.

Complaint is also made of another instruction as to the weight to be given to the testimony of sheriffs, policemen and other officers engaged in securing evidence for the prosecution, because it was stated in the instruction that if the jury think such persons have testified "fairly truthfully" then they should consider their evidence along with the other evidence before them in arriving at their verdict. It is manifest a patent error crept into the instruction, which should have read and was intended to read "fairly and truthfully." It is impossible to believe that the jury could have been misled or the defendant prejudiced by this slight error, and we decline to view it as erroneous because thereof. The instruction otherwise is unobjectionable.

After a verdict of guilty was returned by the jury, it is disclosed by the record that the defendant was not informed by the court of the verdict of the jury, and asked. if he had anything to say why the sentence of the court should not be passed upon him, as is provided by section 495 of the Criminal Code. The record recites that the defendant "being in open court and standing at the bar thereof is asked by the court if he had anything to say why the sentence of the court should not be passed upon him." Error is sought to be predicated because of such omission. The section cited provides: "Before the sentence is pronounced the defendant must be informed by the court of the verdict of the jury and asked whether he has anything to say why judgment should not be pronounced against him." These provisions have been construed, as the language thereby implies, as mandatory. *Dodge v. State*, 4

McCormick v, State.

Nebr., 220; *Tracey v. State,* 46 Nebr., 361.   The section must be complied with and the defendant informed of the verdict returned against him, as well as be asked whether he has anything to say why judgment should not be pronounced against him, in order to pronounce a valid judgment or sentence of imprisonment after verdict of guilty. While we may question the wisdom of such a statute or doubt that its requirements serve any useful purpose in criminal procedure as conducted in the present age, yet the statute remains to be followed according to its provisions, the mandatory character of which can not be questioned.   If the reason for the statute has passed away and become obsolete, and it no longer serves any beneficial purpose, it is for the legislature and not the court to abrogate it.   The error in passing judgment on the defendant having occurred subsequent to the verdict of the jury on which the judgment was rendered, the same must be reversed and the cause remanded for the rendition of a valid judgment; following *Dodge v. State, supra; Tracey v. State, supra; Griffen. v. State,* 46 Nebr., 282; *Hornberger v. State,* 47 Nebr., 40.   Reversed and remanded accordingly.

REVERSED AND REMANDED.

NOTE.—it was not required, at common law, that the prisoner should be informed of the verdict.

It is now indispensably necessary, even in clergyable felonies, that the defendant should be asked by the clerk if he has anything to say why judgment of death should not be pronounced on him; and it is material that this appear upon the record to have been done; and its omission, after judgment in high treason, will be a sufficient ground for the reversal of the attainder.   On this occasion, he may allege any ground in arrest of judgment; or may plead a pardon, if he has obtained one, for it will still have the same consequences which it would have produced before conviction, the stopping of the attainder.   Chitty, Criminal Law, vol. 1, p. *700.

Section 169 of the Criminal Code of Ohio, is identical with our section 495.   For form of journal entry in such cases, Warren, Criminal Law, p. 142.   But the Ohio supreme court has held: Where the record does not show that the court, before passing sentence on the defendant, informed him of the fact that a verdict of guilty had been found against him, in the absence of a bill of exceptions showing the contrary, the fact that such information was so given will be presumed.

McCormick v. State.

*Bond v. State*, 23 Ohio St., 349; *Carper v. State*, 27 Ohio St., 572; *Bartlett v. State*, 28 Ohio St., 669, 670, 672. Whether the provisions of section 169 (our 495) are applicable where there is a plea of guilty, *quaere. Carper v. State, supra.* In Alabama it has been held necessary in a prosecution for a felony that the court should ask the prisoner if he has anything to say why sentence should not be passed upon him. *Mullen v. State*, 45 Ala., 43, 46. Where there are several defendants, they must be severally asked. *Crim v. State*, 43 Ala., 53.

The practice of asking the prisoner if he has any objection to the sentence, will appear absolutely necessary on a moment's reflection. The statute under which the prisoner is prosecuted, may have been repealed since the verdict was rendered, in which event judgment can not be pronounced, *Commonwealth v. Duane*, 1 Binney [Pa.], 601, 2 Am. Dec., 497, or the prisoner may have been pardoned since verdict, 1 Bishop, Criminal Procedure, 1293. The court can take cognizance, judicially, only of a general proclamation of amnesty, and not of a pardon in a particular case. *Greathouse's Case*, 2 Abb. [U. S. Cir. and Dist. Courts], 382. Most, if not all, courts which have passed upon the question hold that a pardon must be pleaded in bar or in arrest of judgment, 15 Ency. Pl. & Pr., p. 448, and note 2; and in England it has been held that a pardon can not be pleaded *ore tenus. The King v. Garside*, 2 Adolph. & Ellis, *266. Under our Criminal Code —section 493—only two grounds appear for a motion in arrest of judgment: (1) jurisdiction of the court; (2) sufficiency of the indictment or information. If the expression of one is the exclusion of all others, how, in Nebraska, is a prisoner to get a pardon (issued after verdict) before the court?

At common law it was deemed essential in capital cases that inquiry be made of the defendant before judgment was passed whether he had anything to say why sentence of death should not be pronounced upon him; thus giving him an opportunity to allege any ground of arrest, or to plead a pardon if he had obtained one, or to urge any legal objection to further proceeding against him.* And if the record did not show that such privilege was accorded to him the judgment would be reversed. *This rule, however, does not apply to an appellate court,*† which, upon review of the proceedings in the trial court, merely affirms a final judgment, without rendering a new one. Due process of law does not require the presence of the prisoner in the latter court at the time the judgment sentencing him to death is affirmed. *Schwab v. Berggren*, 143 U. S., 442.

The Ohio statute appears to have been an original enactment.

---

* Another reason for requiring his presence is to enable the court to identify him as the party adjudged guilty. *Fielden v. People*, 128 Ill., 595.—W. F. B.

† In *State v. Billings*, 77 Ia., 417, 81 Ia., 99, the defendant obtained an order for his appearance in person before the supreme court, although he was at that time confined at hard labor in the penitentiary. This order appears to have been granted as a matter of right; but I am unable to find any opinion on the subject in the Iowa reports. This was nearly three years before the decision in *Schwab v. Berggren, supra.*—W. F. B.

Why—in view of the fact that the prisoner must be present when the verdict is returned—did her code require imparting of information, which the prisoner already possessed? But such statutes are mandatory. If not *in toto*, where is the dividing line?—W. F. B.