# RAYMOND GABLER v. STATE.

No. A-5410.  Opinion Filed March 6, 1926.
(243 Pac. 981.)

Meacham & Meacham, for plaintiff in error.

The Attorney General and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, J.  The information in this case charges that on the 11th day of March, 1924, Raymond Gabler did sell to one B. E. Slagle, one quart of whisky, at and for the sum of $5.  On the trial the jury returned a verdict finding him guilty and fixing his punishment at a fine of $50 and confinement in the county jail for 30 days.  To reverse the judgment rendered on the verdict, he appeals.

The errors assigned question the sufficiency of the evidence to sustain the verdict and rulings of the court in admitting incompetent evidence against defendant's objections.

B. E. Slagle testified: That his home was in Carmen. That he had been working with the federal authorities, sheriff forces, and police departments in different counties for 7 or 8 months. That he came to Arapaho, on the 11th day of March and talked to the county attorney, and went to work as undercover man, and about 4:30 o'clock that afternoon met defendant, Gabler, in Clinton, and asked him if a man could get any liquor anywhere around there. That shortly afterwards the defendant called him out of a pool hall in Clinton and said he could get that whisky now. That he took defendant, Gabler, and young Sturgis in his car and drove west of town and down a hill, and defendant told him to stop here, and he stopped his car; that defendant got out of the car, walked across the road, and returned to the car with a quart of whisky. That he did not know whether it was $5 or $3 that he paid defendant for the whisky there in the car right in the road. That he then told young Sturgis to take a drink. Sturgis passed it back and witness took a drink, and defendant said he had to go about 16 miles to get his whisky. Pretty soon Sturgis wanted another drink, and witness gave it to him. That he drove back to Clinton and took the whisky to his room in the hotel. The next day he turned over what was left to the sheriff. That he did not remember what hotel he stayed at that night, but thought it was the Coleman. That he had a commission from Tom Potter, chief of police of Clinton. That Mr. La Rue, the county attorney, paid him altogether in the neighborhood of $90 or $100 for his work.

Tom Potter, chief of police, testified that he remembers B. E. Slagle came to his office on the 12th day of March, looking for Mr. Jones, deputy sheriff.

Cross-examination, he was asked:

"Q. Are you the same chief of police that issued this commission?"

The state's objection that it was improper cross-examination was sustained, and an exception taken.

For the defense, Nova Harrelson testified: That he was night clerk at the Coleman Hotel; assigned a room upstairs to B. E. Slagle. That Slagle was going down the stairs and fell over the banister into a bunch of grips sitting on the floor, and some money and a pistol fell out of his pockets. That he picked up the money and the gun and Slagle went out, and then came back and asked about his gun. That Slagle registered on the 10th and checked out on the 13th of March.

Frank Sturgis testified: That he first met Slagle in a pool hall on the 11th, and later met Slagle and defendant, Gabler, in Dexter's Restaurant. That Slagle asked him if he wanted a drink, and then Slagle asked Gabler if he wanted a drink. Gabler said, "Yes;" he would take one. That Slagle took them out to a Ford coupe and drove south on Thirteenth street about a mile, and stopped and got out of the car and came back with a quart fruit jar about half full of corn whisky, and all three took a drink, and Slagle gave witness another drink, and then drove his car back to town and let them out at the corner of the Coleman Hotel, and asked them to go up to his room with him, but witness did not go.

Cross-examination, he was asked:

"Q. Don't you know, Frank, that you went all over the country and took Bert Slagle south of town and took him over west of town looking for some whisky, and that you had been as busy as a hunting dog trying to find whisky for Bert Slagle? (Objected to as incompetent, not binding on this defendant, what these two men did.)

"The Court: Overruled. Exception taken.

"Q. What do you say? A. I went to a crap game with him.

"Q. Then you went out to get some whisky for him? A. No, sir.

"Q. Frank, you used to sell whisky yourself, didn't you?

"Counsel for Defendant: We ask the court to instruct the jury to disregard that question.

"The Court: Sustained.

"Q. Did you ever deal in any whisky?

"The Court: Objection overruled.

"Counsel for the Defendant: He can ask him if he has ever been convicted.

"The Court: Yes; sustained."

Joe Redmond testified: That he saw B. E. Slagle in De Luxe Cafe, and he was intoxicated. That Slagle sat down to a table, and witness went to take his order. Slagle was pretty loud, and witness told him, "You have to be a little quieter, Mister," and the proprietor told Slagle he would have to be quiet. That it was in the evening of the same day that Slagle fell down the stairs at the Coleman Hotel.

Raymond Gabler, defendant, testified. That he had known B. E. Slagle a long time, and saw him and Frank Sturgis together in the Dexter Cafe, and talked with him a little, and pretty soon Slagle said: "Let's go and take a drink;" and he said, "All right;" and they went out and got in Slagle's car, and Slagle drove south across the car tracks, and stopped the car, got out, walked over to the fence, and picked up a quart fruit jar, partly full of whisky, brought it back to the car, opened it up, and they each took a drink. Be-

fore they left it was all drunk, and Slagle threw the jar out by the side of the road and drove back to town, stopped at the Coleman Hotel, and invited them up to his room, and said, "I have another drink up to the room." That they thanked him, but did not go with him. That this was all he knew about it, until his arrest a couple of weeks later.

His cross-examination was in part as follows:

"Q. Raymond, isn't it a fact that you are a professional bootlegger? A. No, sir; it is not.

"Q. And isn't it a fact that you sell whisky every week? A. No, sir; it is not.

"Q. How much of the time? A. None of the time.

"Q. Oh, you want this jury to believe that you don't sell whisky? A. Yes, sir; absolutely.

"The Court: Objections overruled. He can't be hurt by that now. Exceptions.

"Q. Raymond, don't you know in the last month that you have been making and selling whisky? A. That is news to me.

"The Court: Well, I don't think he is going to plead guilty, do you? He has answered in his examination in chief. The objection will be overruled. Exception."

B. E. Slagle in rebuttal testified that during his stay in Clinton he was not intoxicated at any time, and was not intoxicated when he slipped and fell down the stairway in the Coleman Hotel.

It is well settled that in a criminal case the limits within which either party may cross-examine upon matters not strictly relevant, but which affect the credibility of the witness, are largely within the discretion of the trial court, and it is quite generally held that, when the defendant testifies on his own behalf, he shall be sub-

ject to cross-examination as an ordinary witness on matters affecting his credibility. However, it is the duty of the court to keep such examination within reasonable bounds, and it is an abuse of judicial discretion to allow questions to a witness which are manifestly calculated to create prejudice in the minds of the jury against the witness, and, if he be the defendant, it may influence them to find against him because of such prejudice. It is one thing to honestly ask questions on cross-examination for the purpose of discrediting a witness, and quite another to ask questions of a witness testifying on his own behalf for the purpose of injuring his case in the eyes of the jury and leading them to believe that he was likely to have committed the offense charged. Pickrell v. State, 5 Okla. Cr. 391, 116 P. 957.

The manifest purpose of the questions asked by the county attorney was to convey to the jury the impression that he knew that the defendant manufactured and sold whisky. Obviously the county attorney had no reason to expect an affirmative answer to the questions asked. In our opinion the questions objected to were improper and well calculated to prejudice the minds of the jury against the defendant.

The only evidence against the defendant was the uncorroborated testimony of the witness Slagle, and numerous discrepancies appear in the testimony of this witness.

In the case of Prochneau v. State, 32 Okla. Cr. 210, 240 P. 1090, we said:

"The only evidence in the case against the defendant was the uncorroborated testimony of B. E. Slagle. He states that he was commissioned as a deputy sheriff of Blaine county, although a resident of Alfalfa county, and that he was employed for the pur-

pose of securing evidence upon which to base prosecutions for violations of the prohibitory law. This witness was flatly contradicted by the defendant and two other witnesses. In addition, he was successfully impeached by three or four other witnesses, and as shown by the record he was guilty of gross misconduct on the trial."

For the errors indicated, the judgment appealed from is reversed.

BESSEY, P. J., and EDWARDS, J., concur.