W. M. HARGROVE et al. v. STATE.

No. A-5683.   Opinion Filed Aug. 5, 1927.
(258 Pac. 1060.)

M. D. Hartsell, for plaintiffs in error.

The Attorney General, for the State.

DOYLE, P. J. The information in this case charged that W. M. Hargrove and Florence Moore did willfully and unlawfully keep and maintain a place at 113½ N. Main street, Muskogee, where malt, spirituous, vinous, and fermented liquors, to wit, whisky, were received, kept, and possessed by them, the said defendants, to sell, barter, and otherwise furnish such liquors in violation of law to the common nuisance of the public.

On their trial the jury found them guilty as charged, but failed to agree on the punishment.

Motion for new trial was duly filed and overruled, and the court sentenced W. M. Hargrove to pay a fine of $150 and imprisonment in the county jail for 90 days, and sentenced his wife, Florence, to pay a fine of $100 and to be imprisoned in the county jail for 60 days. To reverse the judgment they appeal.

The errors assigned and argued are the overruling of the demurrer to the information and the plea of former jeopardy; that the verdict was contrary to law and to the evidence; errors of the court in the admission and exclusion of evidence; and alleged misconduct of the county attorney in his cross-examination of the defendants.

J. D. Patton testified that on November 13, 1923, accompanied by J. P. Murray, and one Satterfield, he went to the defendants' place, that upon entering a lady met them in the hallway, Mr. Murray asked her if she had anything to drink, and she replied that she had only one drink left; that she left and returned with one drink of whisky and gave it to him, and he drank it; that a minute or two later five or six officers entered the place and began searching for whisky.

J. P. Murray testified that he paid for the drink of whisky that the woman gave to Mr. Patton, and about that time five or six officers entered the place.

H. L. Watts, deputy sheriff, testified that he was acquainted with the defendants; that they were husband and wife; that he was acquainted with the general reputation of the place as to being a place where intoxicating liquors were kept for sale, and it was bad; that when the officers raided the place he did not know whether they had a search warrant or not.

J. W. Ragsdale, policeman, testified that he was acquainted wtih the reputation of the defendant's place as being a place where intoxicating liquors were sold, and it was bad; that on several occasions defendants told him it was their private home; that he had searched the place for whisky on an average once a week, but had never found any whisky there.

R. A. Payne, deputy sheriff, testified as to the reputation of the place as did the other witnesses; that he had known Hargrove for two or three years and never known of him doing any work for a living.

C. E. Jackson, policeman, testified that he was one of the officers who raided the premises on the date of the alleged sale; that they did not find any intoxicating liquor; that he had searched the place as often as once a week during the time the defendants resided there and had never found any whisky.

R. D. Jones, undersheriff, testified that he was one of the officers raiding the place; that he was with Deputy Sheriff Payne another time, and they found two one-half pints of whisky, and defendants pleaded guilty in the federal court for having these two one-half pints of whisky.

The defendant W. M. Hargrove testified that he had been living there for about six months previous to the raid; that he did not at that time or any other time have in his possession or keep on said premises any

whisky; that during all times that the officers testified that they had searched the place they had never found any whisky except at one time when they found two one-half pint bottles, which belonged to a man by the name of Jennings, who was rooming there; that he had been engaged in the business of buying and selling secondhand automobiles for about 2½ years, that his wife rented one or two of the rooms; that he had never been convicted except in the federal court and paid a fine for possession of whisky.

The testimony of his wife, Florence, was in substance to the same effect; that upon one occasion the officers found two one-half pints of whisky, which belonged to a man by the name of Jennings; that she had paid a fine in the federal court for the possession of the same.

It is urged that the court erred in admitting the following testimony of the state's witness R. D. Payne over the defendant's objections:

"Q. Do you know what he does for a living?

"The Court:   Objection overruled.

"A. Never knew of him doing anything.

"Q. Have you ever seen him have any living gainful occupation?   A. Not to my knowledge.

"Q. About how often you come in contact with him or saw him?   A. About every other day along about 1923 —two or three times a week.

"Q.   As far as you know, he didn't work? A. Never saw him."

This testimony was clearly prejudicial for the reason that it tended to show that the defendant was a vagrant, and for the further reason that it tended to attack the character of the defendant, as a part of the state's case in chief.   It is the settled rule that the state cannot attack the character of the defendant unless he first puts that

in issue by introducing evidence of his good character. Jones v. State, 20 Okla. Cr. 154, 201 P. 664; Whitlow v. State, 24 Okla. Cr. 307, 218 P. 162; Jenkins v. State, 28 Okla. Cr. 249, 230 P. 293.

When the defendant W. M. Hargrove was under cross-examination, the assistant county attorney asked him this question:

"Q. I will ask you if you did not openly and notoriously make brags on the streets of Muskogee to various people at different times that you were building that home from money you made of selling whisky? A. I did not.

"Q. Never made that statement, or that in substance to no person? A. No, sir."

The record shows that the defendants had just stood trial upon a charge of selling a drink of whisky to Witness J. P. Murray, and when this case was called for trial the jury were deliberating of their verdict. During the course of this trial the jury returned verdicts finding the defendant W. M. Hargrove not guilty, and the defendant Mrs. Hargrove guilty.

When the defendant Mrs. Hargrove was under cross-examination, the following proceedings were had:

"Q. You testified that you were convicted and pleaded guilty in the federal court above a year ago. Will ask you if you have ever been convicted in this court? A. Haven't been unless I have been convicted to-day—first time I have been in county court.

"Q. Do you know whether or not the jury convicted you in that case? A. Don't know.

"Q. What were you tried for? A. Tried for selling a drink of whisky.

"Q. And you don't know what the jury did in that case?

"The Court: Weren't you present when the verdict

came in? A. Didn't hear whether they said I was guilty or not guilty.

"The Court. Let the record show that the state requests the court to inform the defendant, Florence Moore, the jury's decision and to read the verdict.

"Verdict read, being in words and figures as follows:

"In the County Court within and for Muskogee County, State of Oklahoma.

" 'State of Oklahoma, Plaintiff, v. Florence Moore, Defendant. No. 3683.

" ' We, the jury in the above-entitled action, duly impaneled and sworn, upon our oaths find the defendant guilty as charged in the information herein, and fail to agree as to the punishment, and ask the court to fix and assess the punishment.
" ' R. W. Paris, Foreman.'

"Mr. Hartsell: The defendant now renews his objection and furthermore renews objection to court reading verdict in presence of the jury.

"The Court: Did you hear me read that? A. I was talking, and didn't hear what you said.

"The Court. You didn't hear me read the verdict —talking and not paying any attention— A. I didn't hear what you said, guilty or not guilty.

"The Court: Will inform you now that the jury returned a verdict: Found guilty, and left the judgment to the court.

"(By Mr. Lockowitz) Q. After being informed by the court the verdict of the jury in case which you say was for sale of whisky, will ask you to tell this jury if you have ever been convicted in the county court for the violation of the liquor laws of the state? A. Guess I have according to that verdict."

It is well settled that in a criminal case the limits within which either party may cross-examine upon mat-

ters not strictly relevant, but which affect the credibility of the witness, is largely within the discretion of the trial court, and it is quite generally held that, when the defendant testifies on his own behalf, he shall be subject to cross-examination as an ordinary witness on matters affecting his credibility. However, it is the duty of the court to keep such examination within reasonable bounds, and it is an abuse of judicial discretion to allow questions to a witness which are manifestly calculated to create prejudice in the minds of the jury against the witness, and, if he be the defendant, it may influence them to find against him because of such prejudice. It is one thing to honestly ask questions on cross-examination for the purpose of discrediting a witness, and quite another to ask questions of a witness testifying on his own behalf for the purpose of injuring his case in the eyes of the jury and leading them to believe that he was likely to have committed the offense charged. Pickrell v. State, 5 Okla. Cr. 391, 116 P. 957; Gabler v. State, 33 Okla. Cr. 317, 243 P. 981.

Obviously the prosecuting attorney had no reason to expect affirmative answers to the questions asked the defendant W. M. Hargrove. No offer was made to show that said defendant had made such statements against interest, and for this reason the questions objected to were improper, as being well calculated to prejudice the minds of the jury against the defendants.

Under our statute, former conviction may be shown by cross-examination of a witness. However, the proceedings had on cross-examination of the witness Mrs. Hargrove were uncalled for, and the expression of the court, taken in connection with reading the verdict in the presence of the jury, was prejudicial error.

Jurors are easily influenced by the remarks of a trial judge, and the greatest care should be observed

that nothing is said that can by any possibility be construed as an expression of the trial judge's views respecting the merits of a criminal case. Courts cannot be too circumspect in this regard. Pilgrim v. State, 3 Okla. Cr. 49, 104 P. 383.

Mr. Thompson, in his work on Trials, says:

"Sec. 218: Undoubtedly any remark of the presiding judge made in the presence of the jury, which have a tendency to prejudice their minds against the unsuccessful party, will afford ground for a reversal of the judgment."

We are of opinion for the reasons herein expressed the defendants did not have a fair trial. This conclusion makes unnecessary a discussion of the other errors assigned.

For the reasons stated, the judgments of the lower court herein are reversed.

EDWARDS and DAVENPORT, JJ., concur.