## EARL BINGHAM et al. v. STATE.

No. A-6740.   Opinion Filed September 7, 1929.
(280 Pac. 636.)

Simons, McKnight, Simons & Smith, for plaintiffs in error.

Edwin Dabney, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   The plaintiffs in error, hereinafter called defendants, were convicted in the district court of Garfield county on a charge of grand larceny, and their punishment fixed at 100 days in the state penitentiary for each of them.

The defendants assign numerous errors committed by the trial court, which they contend require a reversal of this case.   The first error complained of by the defendants is that the prosecution should have been under section 2119, C. O. S. 1921, which reads as follows:

"Every person who shall take, steal and carry away any domestic fowl or fowls in the nighttime, from the messuage of another, or from the premises upon which the dwelling house of another is situated, and any person purchasing or receiving such domestic fowl or fowls, knowing them to have been stolen, shall be guilty of grand larceny, regardless of the value thereof, and upon conviction shall be punished by imprisonment in the penitentiary not exceeding five years, or by fine not exceeding two hundred dollars, or by confinement in the county

jail not exceeding two months, or by both such fine and imprisonment."

The state elected to prosecute the defendant for grand larceny, under section 2104, C. O. S. 1921, which reads as follows:

"Grand larceny is larceny committed in either of the following cases:

"First. When the property taken is of value exceeding twenty dollars.

"Second. When such property, although not of value exceeding twenty dollars in value, is taken from the person of another.

"Larceny in other cases is petit larceny."

The defendants contend that, since the evidence shows the larceny to have been chickens in the nighttime, the state was bound to prosecute under section 2119, supra, instead of section 2104, supra. Section 2119, supra, makes chicken stealing in the nighttime and from the messuage of another, or from the premises on which the dwelling house of another is situated, grand larceny, and that, too, without regard to the value of the chickens stolen. Under section 2104, supra, the property stolen must be of the value of more than $20, in order to constitute the stealing grand larceny, and the value must be proven.

In the case of State v. Bunch, 23 Okla. Cr. 388, 214 Pac. 1093, this court said:

"Where specific statutes prescribe different penalties prosecution may elect. As between specific statutes prescribing different penalties for any offense, the state may elect to try an offender under either statute."

The state having elected to prosecute for grand larceny, such prosecution is a bar to a prosecution under

section 2119, supra, the special statute on the stealing of chickens in the nighttime.

The defendant next contends that the court erred in permitting the county attorney to ask prejudicial, incompetent, irrelevant, and immaterial questions on cross-examination of the witnesses Mrs. Hulbert Carter and Hulbert Carter. Rex Allen, a witness who testified for the state that he assisted the defendants in the commission of the crime with which they are charged in this case, was a brother of Mrs. Carter and a brother-in-law of Mr. Carter. Allen had testified that he went with the defendants and aided them in the stealing of the chickens alleged in the information. The witness Mrs. Carter, testifying for the defendants, said that she was a sister of the witness Rex Allen; that at the time it is claimed the chickens were stolen, and at the time Rex Allen, her brother, claimed to have gone to the home of Earl Bingham and to have participated in the stealing of the chickens, the witness was living with her father and the father of Rex Allen on his farm in the northwestern part of Kingfisher county, and that Rex Allen was also staying there, and that on the morning of Thursday, February 11, 1926, Rex Allen and the witness' husband left her father's farm for the purpose of coming to Enid, and remained away until Saturday morning, February 13th, when Rex Allen returned to the farm, and he left home that morning on horseback, stating that he was going to Earl Bingham's to work. This also corroborates the testimony of Earl Bingham and the other witnesses as to the time when Rex Allen came to Bingham's farm and went to work, and flatly contradicts the testimony of Rex Allen with regard to his being at Bingham's on Thursday and Friday and Friday night.

On cross-examination, the county attorney asked the witness Mrs. Carter the following questions, and the followings proceedings were had:

"Q. I will ask you, at this time, if your husband isn't charged with the larceny of chickens in Kingfisher county, and is out on bond, and Rex Allen and Albert Allen are witnesses against your husband in that case?

"Mr. P. C. Simons: Objected to as incompetent, irrelevant, and immaterial, and ask the court to admonish the county attorney that he has no right to even ask such a question as that.

"The court: Objections overruled.

"Mr. P. C. Simons: To which the defendants and each of them except.

"Mr. Mitchell: I want to show the interest this witness has with reference to this proposition.

"The Court: I understand it. You needn't discuss it.

"Mr. P. C. Simons: To which the defendant and each of them except.

"Mr. Mitchell: Q. Just answer the question. A. Shall I answer that question?

"Q. Yes; answer it. A. Yes.

"Q. That is true, isn't it? A. Yes.

"Q. That is true, isn't it? A. Yes.

"Mr. P. C. Simons: The defendants and each of them now move the court to strike out the answer of the witness as being wholly incompetent, irrelevant, and immaterial, and not cross-examination, and to admonish the jury to disregard the same, and also to admonish the county attorney that he has no right to ask such questions.

"The Court: Overruled. He has a perfect right to do so."

The witness Hulbert Carter, testifying for the defendants, testified to practically the same state of facts as that of his wife. On cross-examination the county attorney asked the witness the following question and the following proceedings were had:

"Q. Now, I will ask you, Mr. Carter, if at this time you are not charged with the larceny of chickens in Kingfisher county, and now out on bond, and if Rex Allen and his brother, Albert Allen, are witnesses against you in that case?

"Mr. Simons: Wait a minute. To which the defendants and each of them object as wholly incompetent, irrelevant, and immaterial, not proper cross-examination, and ask the court, in addition to that, to admonish the county attorney that he has no right to ask such a question of this witness.

"The Court: Objections are overruled.

"Mr. Simons: To which the defendants and each of them except.

"A. I am, I guess."

Farther on in the cross-examination the county attorney asked the witness if he knew a man named Hildebrand; also a Mr. Bowen, Ed Turk, and Fred Wardick. The witness was then asked if he knew where these men lived, and, replying in the affirmative, he was asked if he had ever been on these men's places. To this the witness answered that he had threshed on these various farms, and he was then asked if he was sure that the times he stated were the only times he had been on these farms owned by Hildebrand, Mr. Bowen, Ed Turk, and Fred Wardick. The county attorney thereupon asked the witness if he had heard about Hildebrand having some chick-

ens stolen; if he had heard about Mr. Bowen having some chickens stolen; if he had heard about Ed Turk having some chickens stolen; if he had heard about Fred Wardick having some chickens stolen. To all of these questions the defendants duly excepted as incompetent, irrelevant, and immaterial, and the court required the witness to answer each of these questions.

The defendants contend that all of this evidence was incompetent, irrelevant, and immaterial, and highly prejudicial, and that because of the misconduct of the county attorney in asking these improper questions, and the error of the court in admitting this evidence, tended to prejudice the minds of the jury, and prevented the defendants from having a fair trial. The testimony of the witnesses Mr. and Mrs. Carter was directly in conflict with her brother, Rex Allen. Their testimony and his could not possibly both be true. The effect of asking these questions, and forcing the witnesses to admit that Hulbert Carter had been charged with chicken stealing in another county, and that the witness Rex Allen was to be a witness in that case against witness Carter, was to discredit the testimony of such witnesses, and detract from its weight in opposition to that of Rex Allen.

In the case of Watson v. State, 7 Okla. Cr. 590, 124 Pac. 1101, this court says:

"When the record discloses that counsel for the state, in the prosecution of a person charged with crime, has been guilty of conduct calculated to arouse the prejudice or passion of the jury and prevent the accused from having a fair and impartial trial, a conviction had should be set aside by the trial court, and a new trial awarded. * * * The repeated asking of incompetent questions, which clearly have for their purpose the intimation of something to the jury that is either not true or not

capable of being proven if true, is wrong, and such conduct of counsel is not cured because the court sustains objections to the questions. In jury trials, incalculable harm is often done by counsel in asking known incompetent questions in the hearing of the jury and thereby forcing the adverse party to object to them also in the hearing of the jury, which manifests a fear of the incompetent questions, and gives emphasis to the harmful matter they are supposed to contain." Brower v. State, 26 Okla. Cr. 49, 221 Pac. 1050; Salyar v. State, 25 Okla. Cr. 433, 221 Pac. 118; Porter v. State, 8 Okla. Cr. 64, 126 Pac. 699; Hargrove v. State, 37 Okla. Cr. 386, 258 Pac. 1060.

There is no offense with which a defendant can be charged, which creates more prejudice against him with a jury composed in whole or in part of farmers, than that of chicken stealing. The questions asked the Carters by the county attorney were calculated to carry the idea to the jury that Carter was himself a chicken thief, and that his wife by her testimony was trying to shield him even against her brother. Not only should the court have sustained the objections of the defendants to this improper testimony, but he should have promptly admonished the county attorney not to ask such questions, and should have instructed the jury to disregard such evidence.

The defendants next contend that the trial court was guilty of prejudicial conduct which deprived the defendants of a fair trial. The county attorney examined the witness Cupps about experiments he had made with his own chickens, to see whether they would go home to roost. He testified that he took 12 of the chickens supposed to have been stolen from him by these defendants, and set them down at a convenient place on his premises, and that these chickens went home to roost as though they

were familiar with the place. The witness then testified that he got six chickens from a neighbor, and took them to the same place where he had placed the former chickens and that they not only failed to go to his henhouse to roost, but that he was unable to drive them there to roost. The defendants objected to the introduction of this kind of testimony which was overruled by the trial court, and then the trial court used the following language:

"The Court: We will all recognize the old saying that chickens will go home to roost, all right. There is no question about that proposition, and the chickens will go to their home to roost. The very fact that a certain bunch of chickens, or a flock of chickens, will go to its recent home to roost, would not prove that some other set of chickens would go to some other place. I don't regard that as being competent. You would just prove the old saying that chickens will go home to roost, but you would not prove anything that would tend to show that those chickens were not his chickens. That is my idea about it. You would establish the fact that chickens will go home to roost. That was competent testimony and objections were made to it. Objections are overruled.

"Mr. Simons: To which ruling of the court the defendants Earl Bingham and Ernest Chappell except."

In the case of Pilgrim v. State, 3 Okla. Cr. 55, 104 Pac. 383, 386, this court said in the body of the opinion:

"Jurors are easily influenced by the remarks of a trial judge, and the greatest care should be observed that nothing is said that can by any possibility be construed as an expression of the trial judge's views respecting the merits of a criminal case."

Mr. Thompson in his work on Trials, says:

"Sec. 218. Undoubtedly any remark of the presiding judge made in the presence of the jury, which have a

tendency to prejudice their minds against the unsuccessful party, will afford ground for a reversal of the judgment."

The comments of the trial judge were improper, and were no doubt taken by the jury as the opinion of the trial court that the weight of the evidence was that the chickens in controversy, and charged to have been stolen by these defendants, actually were the chickens stolen, because they went home to roost.

The defendants assign numerous other grounds of error, but it is unnecessary for the court to pass upon them, for the reason that, if the state again puts the defendants on trial, the errors complained of will probably not occur again.

For the reasons stated, the cause is reversed and remanded.

EDWARDS, P. J., and DAVENPORT, J., concur.