John Henry WEBB, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12402.

Criminal Court of Appeals of Oklahoma.

May 15, 1957.

**820**

Ward & Frazier, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, Presiding Judge.

Plaintiff in error, John Henry Webb, defendant below, was charged by information in the Court of Common Pleas of Tulsa County, Oklahoma, with the offense of operating a motor vehicle on Oklahoma State Highway 11 south of Tulsa on April 1, 1956, while under the influence of intoxicating liquor. He was tried by a jury, convicted, his punishment fixed at 15 days in jail and a fine of $100. Judgment and sentence were entered accordingly from which this appeal has been perfected.

Briefly, the facts disclose that the defendant was driving his automobile about one-half mile south of Tulsa, on Oklahoma State Highway 11, when Patrolmen Bill Mayberry and Frank Thurman observed him driving in a weaving manner across the center line. They approached from the rear, sounded their siren, and halted the defendant. The defendant stopped his automobile in the middle of the highway and it was moved to the shoulder by one of the officers. By this time, Patrolmen Bob Phillips and Pete Forneris arrived on the scene. The defendant got out of his automobile, with the aid of the officers, smelling of intoxicants, had liquor on his clothes, was unsteady on his feet, had bloodshot eyes, and staggered when he walked, as all four of the officers testified, substantially. A search of the automobile disclosed an empty whiskey bottle, whiskey on the floor and seat of the automobile, and the cap from the whiskey bottle in the back seat of the said automobile. The four officers testified that in light of their long experience in dealing with intoxicated persons, the defendant was intoxicated while operating his automobile.

The defendant denied that he was drinking, but admitted that he had been to a dance but that he *had not drank* any whiskey. A lady companion testified that the bottle of whiskey had been given to her as they were leaving the dance, with the request that it be thrown away. She placed the whiskey on the seat between the defendant and herself. Though the defendant and his companion went by her home and stopped in a service station, no attempt was made to dispose of the whiskey until they were surprised by the patrolmen's siren.

Numerous witnesses were called by the defendant to testify to his good reputation. In fact, the defendant testified on direct examination that he had never been convicted of any offense against the State of Oklahoma. On cross-examination, he had no recollection that on August 31, 1953, he pled guilty to the offense of reckless driving and paid a fine of $75 and costs, and on April 13, 1954, he entered a plea of guilty in the Court of Common Pleas to driving without a driver's license and was fined $10 and costs.

[1] These facts clearly presented a question for the determination of the jury. Stuart v. State, Okl.Cr., 280 P.2d 755; Dodson v. State, Okl.Cr., 284 P.2d 437.

■ The defndant further complains of said conviction for the reason that the trial court erred in overruling his motion for new trial in that the County Attorney asked improper and prejudicial questions of Mr. Hicks, who testified as to the defendant's good character and reputation. The County Attorney asked Mr. Hicks if the people he talked to about the defendant's reputation knew the defendant had been previously convicted of reckless driving and at the present time he had a case pending against him in the City Court of Tulsa on a charge of driving while under the influence of intoxicating liquor. The trial court overruled the objection to the interrogation relative to the reckless driv-

ing conviction, but sustained the defendant's objection to the interrogation relative to the dismissal of a drunk driving charge in 1954 and admonished the jury relative thereto.

■ We are of the opinion that both lines of inquiry, if they had been directed to Mr. Hicks' knowledge, would have been admissible under the authority of Long v. State, 61 Okl.Cr. 274, 67 P.2d 980, wherein it was said:

"The county attorney was permitted to ask these witnesses, on cross-examination, whether they had not heard of the defendant having a case pending against him for cattle stealing in Kingfisher county, and permitting the county attorney to argue this evidence to the jury in his closing argument. One of the witnesses, in answer to this question, said that he had heard of such a charge.

"At first glance it might seem that the contention of the defendant was correct, but an examination of the authorities reveals that the overwhelming weight of the adjudicated cases is to the effect that such questions are competent on cross-examination, to test the credibility of the witness, and for the purpose of determining the weight and value to be given to his testimony in chief. It is admissible, not for the purpose of establishing the truth of such reports, but only to establish the credibility of the witness and to determine the weight of his evidence.

"This court, in the early case of Stouse v. State, 6 Okl.Cr. 415, 119 P. 271, 275, lays down the doctrine:

" 'As the general reputation of any person is established by the opinions of witnesses as to the general estimation of his character, it is permissible upon cross-examination of a character witness to show the sources of his information and particular facts may be called to his attention, and he may be asked if he ever heard of them. This

is permissible, not for the purpose of establishing the truth of these facts, but to test the credibility of the witness, and to ascertain what weight or value is to be given to his testimony.'

"This same doctrine has been upheld in other cases from this court. See Pope v. State, 15 Okl.Cr. 162, 175 P. 727; Russell v. State, 17 Okl.Cr. 164, 194 P. 242; Jones v. State, 17 Okl.Cr. 561, 190 P. 887.

"In 14 L.R.A.,N.S., 739, appears an annotated note which gives an extensive discussion on this identical proposition and cites the authorities from many states. In this note the editor says: 'It is manifestly an important question, when character is in issue in a litigation, whether the witness who testifies to the good or evil character of a person is worthy of credit. In testing the credibility of such witness, the same means are resorted to as are employed to determine how far a witness who testified to any other fact of similar relation to the issue on trial is to be believed. His sincerity, his disinterestedness or bias, the extent of his knowledge or information, his acquaintance with the speech of the people of the community in which the person characterized resides, and the opportunities he has had for acquiring accurate information on the subject, are all matters legitimately open to inquiry. If this is steadily kept in mind, much that appears at first sight to be puzzling and contradictory in the decisions and judicial dicta will become plain and harmonious.' See State v. Crow, 107 Mo. 341, 17 S.W. 745; Holloway v. State, 45 Tex.Cr.R. 303, 77 S.W. 14; McCormick v. State, 66 Neb. 337, 92 N.W. 606; People v. Moran, 144 Cal. 48, 77 P. 777."

Also, Allen v. State, 72 Okl.Cr. 102, 113 P.2d 835, 836:

"It is permissible on cross-examination of a witness who has testified to

the good character of a defendant to show the source of his information, and particular facts may be called to his attention, and he may be asked if he ever heard of them. This is especially true as to offenses of the same character with which he stands charged.

"This is permissible, not for the purpose of establishing the truth of such facts, but to test the credibility of the witness and to ascertain what weight or value is to be given to his testimony."

As to the question in relation to whether the people he talked to about defendant's reputation knew of defendant's conviction for reckless driving, the witness, without objection, was permitted to answer, "Not to my knowledge, sir, I don't know anything about it." No objection was made to this question and answer. Moreover, the defendant, testifying in his own behalf, swore he had never been convicted of any offense, and apparently led his counsel to so believe. In rebuttal, it was established that the defendant not only pled guilty to a charge of reckless driving, which had theretofore been reduced from a drunk driving charge, but also pled guilty to a charge of driving without a driver's license for each of which he was fined $75 and $10, respectively. When the witness was asked if he knew whether the people he talked to about the defendant's reputation knew at that time the defendant had a case pending in the City Court for driving while under the influence of intoxicating liquor, objection was interposed and sustained and the jury admonished not to consider the same. Nevertheless the evidence sought to be elicited was competent as it went to the weight and value of Hicks' testimony in chief, and as to the value of the source of his information. The weakness of defendant's position is in his conduct in misleading his counsel and falsifying on the witness stand, completely destroying his credibility. Under this record, we cannot find that the foregoing questions and answers constituted error.

■ The next proposition raised by the defendant is that the daily journal or minute docket kept by Stanley C. Edminster, Judge of the Court of Common Pleas, was insufficient as an exhibit to show the conviction of the defendant of any previous offense. It appears at that time the rules of that court did not require a formal entry of a journal entry of judgment. This question has been decided adversely to the defendant's contention in Jackson v. State, Okl.Cr., 308 P.2d 323, 324, wherein. it was said:

"Where defendant was charged with the crime of driving a motor vehicle while under the influence of intoxicating liquor, and it was further charged that he had prior thereto been convicted of a similar offense, the. court did not err in permitting the introduction of the information the appearance docket showing chronological history and disposition of the case, copy of receipt for fine assessed and paid, and release, and docket of the court for the day of disposition of case, and showing disposition, and signed by the trial judge and attested by the clerk of the court, where these were the only records kept by the court."

Finally, the defendant complains of the state's use of testimony of two highway patrolmen given in rebuttal. They had no connection whatsoever with the instant case but were called for the sole purpose of inquiring of them if they knew the defendant, and if so, when they became acquainted with him. One of the patrolmen answered, "I had occasion to stop him. He was driving on the wrong side of U. S. 66, a four land roadway." The other patrolman was handed exhibit 5, and asked if he knew the defendant, who was pointed out; no further questions being asked. The trial court sustained defendant's objections to the questions asked both patrolmen and admonished the jury to not consider the evidence. The court's admonition did not remove the taint left in the jury's mind.

■ It is apparent these questions were asked of the patrolmen for the sole purpose

of prejudicing the defendant in the eyes of the jury. The questions were deliberately propounded and the answers elicited by the Assistant County Attorney. Hence, the situation is one that involves approval of a reprehensible style of procedure. At first impression, the clear evidence of the defendant's guilt prompted us to consider invocation of the harmless error doctrine, 22 O.S.1951 § 1068, but to do so would lend encouragement to future prejudicial prosecutive procedure of like nature on the theory that the appellate court would wink at the situation. To do so would bring us squarely in conflict with Porter v. State, 8 Okl.Cr. 64, 126 P. 699, 700, wherein it was said:

"The insinuation which they conveyed was that appellant was an all-around bad man and a horse thief. It presented a style of prosecution of which this court does not approve. No man should be clothed with sanctity or visited with condemnation simply because he is accused of crime. He is entitled to fair treatment on his trial, and the presumption of innocence is his legal right until he has been convicted by the jury. It would be a reproach to our courts to allow a defendant to be convicted by unfair means. A verdict should be based upon evidence, and not upon suspicions and prejudice.

\* \* \* \* \* \* \* \*

"We cannot treat this matter as harmless error, because we know, from personal experience that if suspicion is permitted by law to enter the jury box it is far more damaging to a party upon trial than legal evidence would be. Legal evidence may be rebutted or explained; but no lawyer ever lived who can defend against suspicion and prejudice. Every man indicted for crime has a right to a fair trial. This right is denied when counsel for the state are permitted to throw suspicions as firebrands into the jury box against the defendant. When these suspicions are of a character to excite prejudice against a defendant, they cannot be said to be harmless. We cannot understand why prosecuting attorneys will insist on heedlessly and needlessly injecting errors of this kind into a trial. The only way we can put an end to this evil is to set aside verdicts where such practices are resorted to under circumstances calculated to injure a defendant. If this kind of practice is tolerated, the doctrine of harmless error would become a rank injustice."

See also Bingham v. State, 44 Okl.Cr. 258, 280 P. 636.

We cannot say that the defendant did not suffer injury by virtue of the state's unfair insinuations. In any event, we cannot approve such procedure. The judgment and sentence, herein, is accordingly reversed and remanded for a new trial.

POWELL and NIX, JJ., concur.